THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES F. UNDERHILL, Appellant.

*Forgery defined — immaterial whether an alteration was made before or after the instrument was signed — uttering of the instrument — the prosecution is not confined to one item of evidence thereof.*

The term forgery, as used in the statutes of the State of New York, includes the false making as well as the counterfeiting and alteration of an instrument or writing. (Penal Code, § 520.)

The crime of forgery in the third degree is complete if an officer of a corporation falsifies a writing belonging or appertaining to the business of the corporation, intending to defraud the corporation, and it is immaterial whether the alteration in the instrument was made before or after the signing thereof.

Upon a trial for forgery, the prosecution is not confined to one item of evidence tending to show the uttering of an instrument, when the charge in the indictment does not specify the evidence upon which the prosecution relies for the purpose of establishing the charge.

Upon such trial testimony was given in regard to a certain conversation, in respect to which there had been no charge or claim that the conversation constituted the uttering of an instrument. The counsel for the prisoner requested the court to charge that such conversation would not constitute an uttering of the paper, to which the court replied that the jury must take that into consideration with the other facts in the case.

*Held,* that although the request to charge was correct as an abstract proposition, yet, inasmuch as there had been no claim made in the case that the conversation constituted an uttering of the instrument, the comment of the court following the request was not such an error as to necessitate the reversal of a judgment of conviction.

APPEAL by the defendant, Charles F. Underhill, from a judgment of the Court of Oyer and Terminer held in and for the county of Monroe, and entered in the office of the clerk of the county of Monroe on the 28th day of May, 1892, adjudging the defendant guilty of the crime of forgery in the third degree.

*George Raines,* for the appellant.

*Howard H. Widener, Assistant District Attorney,* for the respondent.

HAIGHT, J.:

The defendant was the president of the Flour City Life Association, an insurance corporation having its principal place of business

in the city of Rochester. In November, 1890, Philip Wareham, of Brooklyn, Mich., died holding two policies in the association, numbered respectively 5748 and 9629, in which his son, Hamilton Wareham, was made the beneficiary, and who, by reason of the policies, became entitled to receive from the association the sum of about $2,000. It appears that after the death of Wareham was reported, the defendant and one McCargo went to Michigan, called upon Hamilton Wareham, the beneficiary under the policies, and entered into an agreement with him to compromise and settle his claim against the association for the sum of $400, which sum they then paid to him. The compromise agreement so entered into with Wareham was in writing, drawn by the defendant, and is as follows: "Whereas, the undersigned, Hamilton Wareham, of Grand Ledge, Mich., the beneficiary named in certain certificates of insurance numbered 5748 and 9629, issued by the Flour City Life Association and dated the 8th April and 12th August, 1889, upon the life of Philip Wareham, of Brooklyn, for 16 shares in Class B of said association; and whereas, eight shares would have matured thereon on approval of the same; and whereas, it is claimed upon the part of said association that by reason of certain omissions and misstatements in the application therefor and contradictions thereof which appears by the proof of loss filed with said association that a legal defense exists against the payment of said policy, or any part thereof, and it is deemed expedient to compromise and adjust the same upon an equitable basis. The undersigned, Hamilton Wareham, hereby, for value received, and in consideration of all the premises, agrees that he will accept the sum of fourteen hundred dollars in compromise of any and all claims and demands whatsover due upon or hereafter to grow due by reason of said certificates. And upon payment of said sum in cash the undersigned does hereby receipt in full for the amounts due on said policy. The said claim is hereby compromised and adjusted accordingly, and the above-named amount is accepted in full accord and satisfaction thereof. Witness the hand and seal of said party this 3rd day of December, 1890." The above was signed by Hamilton Wareham, with his seal affixed, and acknowledged before one E. O. Kelley. It is claimed that this instrument was forwarded by the defendant to the office of the association in Rochester, accompanied

with a check on the association for $1,400, with a letter to the secretary directing him to take the check to the Central Bank and get the cash on the same, and then with the cash to go to some other bank, and get New York drafts to the amount of $1,400, payable to the defendant's order, and to forward them to him at Iona, Mich.; that the secretary did as directed; that the drafts to the amount of $1,400 were received by the defendant, indorsed by him, and that he procured the money on the same. It is further claimed that after the defendant returned to Rochester he presided at a meeting of the directors of the association on the 17th day of January, 1891, and that at that meeting the compromise contract settling the Wareham claim was presented to the board of directors, was approved and ordered paid. The evidence tends to show that the compromise agreement was drawn in a room occupied by the defendant in Michigan; that Wareham was unable to read it because of impaired sight; that the defendant read it over to him before he signed it, and that in reading it he read the sum to be paid in the compromise as $400, instead of $1,400; that thereupon Wareham signed the same, and was paid $400.

The first count in the indictment was evidently drawn under section 511 of the Penal Code, and charges forgery in the second degree in this, that the defendant feloniously did then and there falsely make, forge, alter and counterfeit the said written instrument with intent then and there to injure and defraud the Flour City Life Association.

The second count in the indictment charges the defendant with the same crime in uttering the instrument.

The third count in the indictment was evidently drawn pursuant to the provisions of sections 514 and 515 of the Penal Code. It charges the defendant with having falsely altered the instrument in question, being a writing belonging to the association, then and there being a corporation, by writing " teen " after " four " therein, so as to raise the amount from $400 to $1,400.

The fourth count charges the defendant with the same crime in having uttered the instrument.

In the third count of the indictment the formal conditions are for some reason omitted. It is not charged that the defendant was an officer or an employee of the corporation, or that he defrauded any

person by his act. It is quite possible that this count is defective, but we discover no such defects with reference to the fourth count, the one under which we understand the defendant to have been convicted.

The evidence is of such a character as to make the guilt or innocence of the defendant a question for the jury. We shall, therefore, discuss only the legal propositions presented.

The court, in its charge to the jury, at first submitted the question as to whether the instrument alleged to have been altered was forged in the city of Rochester, with the instruction that if the alteration was made in the State of Michigan there could not be a conviction under the first and third counts in the indictment; but afterwards, at the request of the defendant's counsel, the judge charged the jury that if they found the defendant guilty it must be of uttering the instrument, either in the second or third degree, as charged in the second or fourth counts of the indictment. With reference to the charge in the second degree, he instructed the jury that they could not convict unless they found as a fact that the alteration was made after the instrument was signed by Wareham; but with reference to the charge in the third degree, he instructed the jury to the effect that it was immaterial whether the letters "teen" were written in before or after the signing by Wareham. To this charge an exception was taken by the defendant. The question thus presented is one of interest, and does not appear to have been considered in any reported case to which our attention has been called. At common law the question as to whether it was forgery to procure a genuine signature to an instrument by means of false representations as to its contents gave rise to conflicting decisions. The text writers upon criminal law from Coke to Barbour were of the opinion that the fabrication and false making of a written instrument, as well as the fraudulent insertion, alteration or erasure in a material part, whereby a new operation was given to it, would amount to forgery, even though it were afterwards executed by a person ignorant of the deceit. (3 Inst. 170; 1 Hawkins, chap. 21, § 2; 2 East's P. C. chap. 19, § 2; 2 Russell on Crimes, chap. 32, § 1, p. 319; 2 Deacon's Criminal Law, 1402; 1 Barbour's Criminal Law, 114.) But in *Regina* v. *Collins* (2 M. & R. 461) Baron ROLFE refused to follow this rule, and to the same effect is *Regina* v. *Chadwick* (Id. 545).

These cases have been followed by the more modern writers. (2 Whart. on Cr. Law, § 1435; 1 Bishop's New Cr. Law, § 584; 2 id. § 156.)

In *Hill* v. *State* (1 Yerg. 76; 24 Am. Dec. 441) it was held that the writing of a note for a person, inserting a larger sum than the real amount due, and falsely and fraudulently reading it over to him as for the latter amount, with a view to defraud him, is not forgery. (See, also, *Comm.* v. *Sankey*, 22 Penn. St. 390; 60 Am. Dec. 91; *State* v. *Flanders*, 38 N. H. 324, 336.)

But all is not harmony under the modern cases. (*State* v. *Shurt-liff*, 18 Me. 368; 3 Rice on Ev. § 489. See note to *Arnold* v. *Cost*, 22 Am. Dec. 301, 311.)

It will be observed that none of the authorities referred to attempt a construction of our recent statute defining forgery in its various degrees. The term "forgery," as used in our statute now, includes false making as well as counterfeiting and alteration. (Penal Code, § 520.)

"A person is guilty of forgery in the second degree who, with intent to defraud, forges * * * an instrument, or writing, being or purporting to be the act of another," etc. (Penal Code, § 511.) It may be that an instrument cannot purport to be the act of another before his name is placed thereon. We shall, therefore, without deciding the question, assume that under our statute defining forgery in the second degree, the alteration must be made after the instrument is executed. The trial court so charged the jury. But is this the rule in reference to the charge in the third degree? The Code provides that, "a person who either (1) being an officer, or in the employment of a corporation, association, partnership or individuals, falsifies or unlawfully and corruptly alters, erases, obliterates or destroys any accounts, books of accounts, records or other writing belonging to or appertaining to the business of the corporation, association or partnership or individuals, * * * is guilty of forgery in the third degree." (Penal Code, § 514.)

Under this statute the crime is complete if an officer of a corporation falsifies a writing belonging to or appertaining to the business of the corporation, intending to defraud the same. Such is the charge made against the defendant. The procuring of the signature of Wareham to the compromise agreement by falsely repre-

senting its contents to him, standing alone, may not be forgery. He was not defrauded. He agreed to take $400, and was paid $400. The fact that the paper bore his genuine signature might make it a true paper as to him, for he, by the act of signing, asserted the truthfulness of its contents; but as to the association it is a false paper, for it represents that Wareham was paid $1,400, when, in fact, he was paid but $400, and his signature thereto does not change the fact. Suppose the defendant and Wareham had collusively arranged to defraud the association, and for the purpose of carrying out such arrangement the defendant had written the instrument, inserting the words "fourteen hundred dollars," and Wareham, knowing of such insertion, had signed the same. Can there be any doubt but that the instrument would have been a false one within the meaning of the statute? And is the defendant's position in reference thereto different by reason of his having procured Wareham's name through misrepresentation and deceit? We think not. To our minds the crime consists in the making of the false instrument belonging to or appertaining to the business of the corporation by an officer thereof. The writing is one act, and the procuring of Wareham's signature is another. The two acts together constitute the making. If we are correct in this view, it is immaterial under this statute whether the "teen" was written before or after the signature of Wareham.

It is contended that the court erred in submitting to the jury the various alleged acts of the defendant in connection with the paper after its execution, as bearing upon the question of uttering. It was claimed that the defendant forwarded the instrument to the office of the association, there to be placed upon file as a voucher for money expended by him as an officer, etc. The trial court submitted the evidence bearing upon this question to the jury for them to determine whether it was not an uttering of the instrument. The attention of the jury was also called to the meeting of the directors on the seventeenth of January, at which the defendant presided as president, when the claim was audited. It was submitted also as to whether this was an uttering. We have discovered no errors in reference to the ruling upon these questions. We do not understand that the prosecution was confined to one item of evidence tending to show an uttering of the instrument. The charge in the indictment

does not specify the evidence upon which the prosecution relied for the purpose of establishing the charge. The placing, or causing of the instrument to be placed upon file in the company's office for the purpose of having it subsequently acted upon when the directors should meet is one step; the action of the board of directors in approving of the compromise and ordering it paid is another step. Each is consistent with and dependent upon the other, and the two together complete the transaction. Whilst either, standing alone, may be sufficient to constitute the crime of uttering, the People certainly were entitled to give in evidence the full transaction and have it considered by the jury.

The defendant's counsel requested the court to charge that the conversation with Colvin would not constitute an uttering of the paper. To this the court replied that the jury must take that into consideration with the other facts in the case. There had been no charge or claim that the conversation with Colvin constituted an uttering. The defendant's counsel had made a claim to the court to the effect that there was no evidence that Underhill either spoke about, referred to, or had any relations with the paper, from the time that it came from Michigan until he delivered it to the district attorney, and asked the court to charge that there was no evidence from which they could find that Underhill after his return made any representation or did any act with reference to the paper in question. In answer to this, the court called his attention to the testimony of Colvin. Colvin had testified to a conversation with Underhill in which he stated that the claim had been compromised for $400; that there had been crooked work in reference to it; that he did the writing, and that the crooked work had been charged to him before the grand jury; that at the time he drew the papers McCargo stepped behind him and whispered to him to draw the paper for $1,400 instead of $400, and that McCargo made as much out of the settlement as he had, etc. It was claimed that this amounted to an admission of his guilt, and if an admission, it showed that there had been an uttering; so, that whilst the conversation did not constitute an uttering, it tended to show that there had been an uttering. The request to charge, as an abstract proposition, was correct, but inasmuch as there had been no such claim

made in the case, we think that the comment of the court following it was not such an error as to necessitate a new trial.

The judgment, orders and conviction should be affirmed.

DWIGHT, P. J., and LEWIS, J., concurred.

Judgment, orders and conviction appealed from, affirmed.