## Court of Appeals.

### April 10, 1894.

### PEOPLE v. CHARLES F. UNDERHILL.

(58 St. Rep. 440; 142 N. Y. 32; reversing 68 St. Rep. 220; 75 Hun, 329.)

FORGERY—SECTION 521 OF PENAL CODE.
>    To sustain a conviction for forgery under the provision of section 521 of the Penal Code, it must appear that the writing or instrument was forged, or was altered after its execution.

Appeal from judgment of the general term of the supreme court in the fifth judicial department, entered upon an order made January 18, 1894, which affirmed a judgment of the court of oyer and terminer of Monroe county entered upon a verdict convicting defendant of the crime of forgery in the third degree, and also affirmed an order denying a motion for a new trial and in arrest of judgment.

The facts, so far as material, are stated in the opinion.

George Raines, for appellant.

Howard H. Widener, for respondent.

O'BRIEN, J.—The defendant was convicted of the crime of forgery in the third degree, upon an indictment containing four counts, charging, in various forms, the forging, altering and uttering by the defendant, when president of the Flour City Life Association, an insurance corporation or association on the co-operative or assessment plan, of a writing belonging to and pertaining to the business of the association, with intent to defraud.  There

is little if any dispute in regard to the main facts of the transaction upon which the indictment was framed.   It appears by the record that the defendant was the president of the insurance association above named, and as such one of the principal managing officers.   The main business office of the corporation was at Rochester.   In the year 1889 one, Philip Wareham, a resident of the state of Michigan, applied for membership in the association, was accepted, and two certificates issued to him upon the terms and for the purpose of securing the benefits and indemnity provided by the charter and by-laws of the association.   In November, 1890, he died, and his son, Hamilton Wareham, the beneficiary named in the certificate, presented to the corporation proofs of death, and claimed $2,000 as the sum secured to him by the insurance. It was claimed that the certificate was procured by the beneficiary from the association by fraud, and the loss was not recognized by the company as one for which it was liable.   In the early part of December, 1890, the defendant and another person, employed to adjust losses, went to Michigan, and settled the claim for $400. The beneficiary signed and sealed a written instrument, bearing date December 3, by which the claim was compromised and released.   The instrument recites the issuing of the certificate, the amount apparently due thereon, the fact that a defense existed to the same on the part of the company, and the release of the claim upon payment of $1,400.   The actual settlement with the beneficiary was for $400 and he was paid only that sum.   The evidence tended to show that the defendant drew $1,400 from the treasury of the corporation, paid $400 to the beneficiary in settlement of the claim and that either he or his associate retained the balance of $1,000 and fraudulently appropriated the same. The proof also tended to show that the beneficiary intended to settle for the $400 and supposed that such sum was the consideration expressed in the paper which he signed, and that the word "fourteen" instead of "four" was fraudulently inserted in the paper before the same was signed.   The settlement was made in a room at a hotel at Lansing, Michigan, and the defendant, the adjuster who accompanied him, the local agent of the company at that place, and the

beneficiary who presented the claim, were all present at the transaction. The paper was sent to the office of the company at Rochester and placed on file, and there treated as a settlement and adjustment of the claim at $1,400 and as a voucher for a disbursement of that amount, but by whom it was mailed or sent does not conclusively appear, though there was proof sufficient to warrant the jury in finding that it was mailed to the office by the defendant. It was for forging and uttering this paper that the defendant was indicted and tried. With respect to the charge of forgery by corruptly altering the instrument, it was assumed that the defendant could not be convicted if it was done in the state of Michigan or beyond the jurisdiction of this state, and the learned trial judge so charged in substance. The signature of Wareham, the beneficiary, was admitted to be, and beyond all doubt was, genuine, and thus the charge of forgery proper had to rest upon proof that the defendant, after the execution of the paper and within this state, altered the same by changing the word "four" so. as to make it read "fourteen." The proof upon this point was of such a character that the learned trial judge, before the close of his charge, expressed his opinion that if the jury found the defendant guilty at all it must be of uttering the instrument knowing it to be forged or counterfeit. The jury returned a verdict of guilty of forgery in the third degree in uttering the paper. In regard to the facts it was the theory of the defendant's counsel that the word "fourteen" was fraudulently inserted or changed before the paper was actually signed by the beneficiary, and the proof at the trial, and all the circumstances tended to sustain this theory, though it may be there was not an entire absence of proof in support of the claim that the change was made by some one after execution. It is not important to examine the evidence in support of the last hypothesis, since the cause was tried and submitted to the jury upon the principle that, as to the charge of uttering the instrument, it was wholly immaterial whether the defendant made the change before or after it was signed. The learned judge so instructed the jury. At the close of the charge the defendant's counsel requested the court to instruct the jury that if the instru-

ment was altered before it was signed or executed no conviction could be had under the indictment for uttering a forged paper. The learned judge refused to so instruct; and to this refusal as well as to the charge as made, on this subject, there was an exception.    It is apparent from the evidence given and now appearing in the record from the general course of the trial and from the charge, that this judgment cannot be sustained except upon the theory that the defendant committed the crime of forgery in the third degree in knowingly uttering or passing off as true, an instrument releasing and compromising the claim against the company, which defendant had procured, or induced the beneficiary to execute, by some fraud, device or misrepresentation, with intent to defraud the corporation, of which he was the chief executive officer, and which, in fact, was used for that purpose, and had that effect.

By section 521 of the Penal Code a person who, knowing the same to be forged or altered, and with intent to defraud, utters, offers, disposes of or puts off as true, * * * a forged * * * writing or other thing, the false making, forging or offering of which is punishable as forgery, is guilty of forgery in the same degree as if he had forged the same.    In order to bring a case within this section the thing or writing must be forged, altered or counterfeited, and if it is, than uttering it or passing it off as true, is punishable as the forgery itself.    It is not necessary to prove that the accused forged or altered the writing himself.    It is sufficient if it appears that he has knowingly uttered or passed it off as true, knowing it to be false, forged or altered.    But this section has no application to a writing, the signature to which is genuine, and no change in which is shown to have been made after execution, but executed by the party under a mistake or in ignorance of the facts, induced by fraud or deceit.    By section 514 an officer of a corporation who falsifies, or unlawfully or corruptly alters, erases, obliterates or destroys any accounts, books of accounts, records, or other writing belonging to or appertaining to the business of the corporation is guilty of forgery in the third degree, and the same offense is committed under section 515 by any person who, with

intent to defraud or to conceal any larceny or misappropriation by any person of any money or property, alters any writing belonging to or appertaining to the business of a corporation. The instrument in question was when executed, a writing belonging to or appertaining to the business of a corporation within the meaning of these sections, and if proved to have been changed in the manner stated in the indictment, after its execution by the defendant, he could have been convicted of forgery, if done within the jurisdiction of this state, or of altering or passing it off as true, if, knowing its character, he caused it to be deposited in the office of the company for the purpose of giving it effect or with intent to defraud the company.

But, assuming, as we must, that the word "fourteen" was fraudulently inserted, or that the word "four" was fraudulently changed before the execution, then the offense which the party committed was not forgery. No writing was altered within the meaning of the statute, but a fraud was perpetrated upon the company and, perhaps upon the party who signed the paper. If the defendant, by means of such a paper, knowingly appropriated to his own use the corporate funds, he doubtless subjected himself to civil and criminal responsibility. We are not now concerned with the particular offense against the Penal Code involved in such an act, as that question is not now before us, but it would seem to be clear that it does not and never did constitute the crime of forgery in any degree, and the altering of such a paper did not warrant a conviction under the indictment. In order to sustain any of the counts in this indictment it was incumbent upon the people to show that the defendant corruptly and with intent to defraud, either forged or altered the paper after it had been signed, or that he uttered or passed it off as true, knowing that it had been so changed or altered. The word writing as used in these sections refers to an executed instrument, and it is so defined in section 513. That section declares that "An instrument partly written and partly printed, or wholly printed, with a written signature thereto, and any signature or writing purporting to be a signature of, or intended to bind an individual, a partnership, a

corporation or association, or an officer thereof is a written instrument or a writing within the provisions of this chapter." The learned court below was of the opinion that the crime of forgery is complete when it is shown that a party falsifies, a writing, and that in this case it was shown to be a false paper, as it was used to represent to the corporation that Wareham had been paid $1,400, when, in fact, he had been paid but $400. The paper was doubtless intended as a fraudulent device to obtain money from the corporation for the benefit of the defendant or whoever received it, but the use for which it was intended and to which it was in fact put did not make it a forgery. In order to establish the commission of that crime it was necessary to prove, to the satisfaction of the jury, that the defendant, with intent to defraud, altered the paper after it was. signed, for not till then was it a writing within the meaning of the statute, and it is the altering or passing off as true of a writing thus altered, with knowledge that it has been so changed, that the statute punishes in the same way as the forgery or alteration itself. This was a false paper in the sense that it expressed a falsehood and was calculated to deceive and defraud; but every false paper is not necessarily a forgery. An instrument of this character is falsified within the meaning of the statute referred to only when, by some alteration after actual execution, it is made to speak differently from what it did when signed, or given a different effect in some material respect, with a fraudulent or corrupt intent. We think that the case was submitted to the jury upon an erroneous view of the law applicable to the questions involved.

There are other questions in the case raised by exceptions taken in the course of the trial and to the charge and to refusals to charge. Some of these questions are of considerable importance and it might be difficult to- sustain the rulings upon them made at the trial, but as the point already discussed disposes of the appeal it is not necessary for us to consider them, since they may not arise upon another trial.

The judgment should be reversed and a new trial granted.

All concur.

Judgment reversed.