JOHN A. HENNESSEY ET AL. *v.* TRADERS' INSURANCE COMPANY.

[39 South. Rep., 692.]

LIBEL.    *Insurance advertisement.*

It is not libelous for a fire-insurance company to publish a statement to the effect that while a rival company may have "settled" losses growing out of a certain fire before it had done so, yet the rival company did not pay them first, and at the latest account that company's money for the payment of its losses had not shown up, adding: "Moral: Insure in this [defendant] company. Losses paid promptly, not 'settled.'"

FROM the circuit court of Warren county.

HON. HENRY C. McCABE, Special Judge.

Hennessey and another, appellants, who did business under the trade name of "P. L. Hennessey & Bro. Agency," were plaintiffs in the court below; the insurance company, the appellee, was defendant there. From a verdict and judgment, predicated of a peremptory instruction, for defendant, the plaintiffs appealed to the supreme court.

Appellants were insurance agents in Vicksburg, representing several companies; Dickson was an insurance agent in Vicksburg, representing the defendant, the Traders' Insurance Company. Mrs. Catherine Enright owned a dwelling house containing certain personal property. The building was insured in appellants' agency and the personal property in the appellee company. On Tuesday, May 15, 1900, a fire partially destroyed the building and much of the personal property. The fire occurred in the forenoon. In the afternoon plaintiffs, accompanied by an adjuster, called upon Mrs. Enright, and reached an agreement with her whereby the building was to be repaired at the cost of the insurance company. A contract with a carpenter was promptly made, by which he was to go to work at once. Two days after the fire, plaintiffs published the following card in a daily paper of Vicksburg:

"Quick Settlement.—Mrs. Enright's house was damaged by fire at 11 A.M. Tuesday; the insurance was settled at 5 P.M. same day through P. L. Hennessey & Bro. Agency."

Two days after this publication, Dickson, appellee's agent, visited Mrs. Enright for the purpose of adjusting appellee's portion of the loss, reached a satisfactory adjustment, and gave her a check for the amount agreed to be paid her. Dickson then asked Mrs. Enright if she had been paid the amount of the loss on her home, to which she replied, "No, sir; I have not received any money;" and upon Dickson's request the good woman signed a statement to that effect. Dickson, the appellee's agent, then published in a Vicksburg newspaper, three days after the plaintiffs' publication, the following:

"Loss Paid in Cash.—We note card of Messrs. P. L. Hennessey & Bro., 'Quick Settlement' of Enright loss, stating loss was 'settled' same day as fire. We covered the furniture in this dwelling, and paid our loss cash without discount today, Saturday, May 19th, as per receipt in full from Mrs. Enright, which we hold. Up to latest account the money for the Hennessey

agency loss has not shown up. Moral: Insure in the Traders'. Losses paid promptly, not 'settled.' Helion Dickson, general agent Traders' Insurance Company, Chicago. Cash assets, $2,-285,847.06; surplus, $1,525,553.05."

*S. M. Shelton,* for appellants.

In 18 Am. & Eng. Ency. Law (2d ed.), 986, the legal principles governing this case are laid down in the following language: "Surrounding Circumstances and Subject-matter to which Words Relate.—It is important to the proper understanding of the meaning of the words, whether written or oral, and of the motives and purpose of the same, that it should be shown to the court and jury what was the subject-matter to which the words referred; and it often happens, on the one hand, that words not actionable in themselves are rendered slanderous by the subject-matter to which they have relation, and, on the other hand, that words which, unexplained by extraneous circumstances, would be actionable, prove to be harmless when so explained."

Again, on p. 942 of the same volume, it is said: "Words Touching Another in his Office, Trade, Profession, or Business.—(*a*) Broad statement of general rule: In general, it is a familiar principle that words not actionable without proof of special damage may become so if spoken of one engaged in a particular calling or profession; the rule being that any words spoken of a person in his office, trade, profession, business, or means of getting a livelihood, which tend to expose him to the hazard of losing his office or which charge him with fraud, indirect dealings, or incapacity, and thereby tend to injure him in his trade, profession, or business, are actionable without proof of special damage, even though such words, if spoken or written of an ordinary person, might not be actionable *per se.*"

The circumstances surrounding the parties were as follows: Both were engaged in the insurance business; they were both seeking business in the same community. One of the most

material elements of the success of an insurance agent is the public confidence in his promptness and that his companies will pay losses without trouble, and an attack on that reputation is an attack on the very foundation of the agent's success.

A reputation for honesty and integrity is important, and a suggestion that an agent is seeking business by false pretenses that his losses are settled promptly, when, in fact, they are not, is a serious attack upon his reputation and works a great injury to his business.

*Harris Dickson,* for appellee.

Is the card libelous? This is a question for the court, to be decided from the card itself. In Stanhope's famous case, hundreds of years ago, Chief Justice Wray said: "The judges had resolved that actions for scandals ought not to be maintained by any strained construction or argument." The words must be taken in their natural and obvious meaning, which cannot be enlarged by innuendo.

"Where the words complained of are only ordinary English words, the court can decide at once wether they are *prima facie* actionable or not. Where the words are in a foreign language, or are technical or provincial terms, an innuendo is absolutely necessary to disclose an actionable meaning." Newell on Libel and Slander, 277; 13 Ency. Pl. & Pr., *Ib.,* 51, and cases cited; *Gunning* v. *Appleton,* 58 How. (N. Y. C. Pl.), 471; *Kilgour* v. *Star,* 53 Atl., 716; *Verbeck* v. *Duryear,* 73 N. Y. St., 346.

Mr. Newell, in his recent work on this subject, says: "Where language is used concerning a person or his affairs which, from its nature, necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss, its publication *prima facie* constitutes a wrong without any allegation or evidence of damage other than that which is implied or presumed from the fact of publication. This is all that is meant by the term 'actionable *per se.*'"

"To make written or printed words actionable without proof of special damage they must contain imputations which tend to subject one to disgrace, ridicule, or contempt." 18 Am. & Eng. Ency. Law, 866, note and cases.

From the latest cases these are selected which most clearly touch the case at bar:

Newell, note 24, p. 63: "Plaintiffs purchased goods of defendants' agent and advertised them falsely. Defendants inserted in another paper, published in the same town, an advertisement, as follows: '*Caution.*—An opinion of Shaw-knit hose should not be formed from the navy-blue stockings advertised as first quality by Messrs. B. & Co. (plaintiffs), since we sold that firm some lots which were damaged in the dyehouse.' Held, That the language of the advertisement, giving to it its natural significance, was not libelous." *Boynton* v. *Shaw Stocking Co.,* 146 Mass., 219; *Walker* v. *Hawley,* 56 Conn., 559 (16 Atl., 674).

Newell, note 37, p. 65: "It is no libel upon a coal dealer in L., who had advertised genuine Franklin coal for sale, to publish the following advertisement: '*Caution.*—The subscribers, the shippers of the only true and original Franklin coal, notice that other coal dealers in L., than our agent, J. S., advertise Franklin coal. We take this method in cautioning the public of buying of other parties than J. S., if they hope to get the genuine article, as we have neither sold nor shipped any genuine Franklin coal to any party in L., except our agent, J.'" *Boynton* v. *Remington,* 3 Allen, 397.

Newell, p. 62: "It is not libelous to publish of a professional man that 'he has moved his office to his house to save expense.' In order to maintain an action for libel it must appear that the plaintiff has sustained some special loss or damage resulting from the publication complained of, or the charge itself must be such that the court can legally presume that the party has been injured in his reputation or business, or subjected to public

scandal in consequence thereof.". *Stewart* v. *Minn. Tribune,* 41 N. W., 457.

TRULY, J., delivered the opinion of the court.

By no construction, even the most strained, can we possibly hold the publication · complained of to be libelous. While phrased in a misleading way, it, nevertheless, stated substantially the truth. Appellants themselves, in their own card claiming credit for prompt adjustment of this very loss, recognized the distinction between a "settlement" and a "payment" of a fire loss. The card inserted by the agent of appellee did no more. It was an advertisement, sharp and unfair probably, but certainly not libelous. Numerous authorities cited in brief of counsel for appellee demonstrate the correctness of this conclusion.

*The judgment is affirmed.*