**Perry E. ROSENQUIST, Plaintiff,**

v.

**V. V. HARRIS and V. V. Harris, Jr. (Harris Foundation, Incorporated, substituted for V. V. Harris, deceased), Defendants.**

Civ. No. 2727.

United States District Court
D. North Dakota, North-
western Division.

Feb. 15, 1956.

R. H. Points, Crosby, N. D., and Milton K. Higgins (of the firm Higgins & Donahue), Bismarck, N. D., for plaintiff.

E. J. McIlraith, Minot, N. D., for defendants.

REGISTER, District Judge.

This action was commenced in the District Court of Divide County, Fifth Judicial District, State of North Dakota, by the plaintiff to determine adverse claims to the North Half of Section 26, and the Northeast Quarter of Section 17, in Township 163 North, of Range 96 in Divide County, North Dakota. The cause was subsequently duly removed to this court, jurisdiction being based on diversity of citizenship. The case was tried to the Court at Minot, North Dakota, on December 16, 1955. During the trial it was ordered that Harris Foundation, Incorporated, be substituted as a party defendant in place of V. V. Harris, now deceased, pursuant to stipulation of counsel.

Plaintiff alleged in his original complaint, dated February 17, 1953, that he is the owner in fee simple (less an undivided one-half interest in the minerals, including oil, gas and hydrocarbons therein) of said North Half of Section 26, and the owner in fee simple of said Northeast Quarter of Section 17; that the defendants claim an undivided three-eights and one-eighth interest, respectively, in and to the oil, gas and other minerals under said land by virtue of a quitclaim deed from one Vernon J. Drabek; that the claims of said defendants arise out of and rest upon a mineral deed dated June 8, 1950, bearing the names of the plaintiff and his wife as grantors, to Vernon J. Drabek, as grantee, which deed purports to convey an undivided one-half interest in such oil, gas and minerals to said grantee; that "the said mineral deed to Vernon J. Drabek was never signed, executed or delivered by the Plaintiff and the same is a complete and absolute forgery and that the Defendants have no right or interest in the said land or in the minerals thereof for the said reason". The purpose of this action is to declare said latter deed to be null and void and a forgery, and the interests claimed by defendants resting thereon likewise declared null and void.

Defendants by their answer in effect allege ownership of such three-eighths and one-eighth interest, respectively, in such oil, gas and minerals; assert that they are bona fide purchasers thereof for value from said Vernon J. Drabek; and deny the allegations concerning forgery.

On September 8, 1953, the deposition of plaintiff was taken at Minot, North Dakota. Thereafter, and under date of November 12, 1953, an Amended Complaint was prepared and thereafter filed herein; this Amended Complaint is similar to the original Complaint but contains these additional allegations: "That the said deed to Vernon J. Drabek was never acknowledged by the plaintiff nor his wife and that no consideration was delivered therefor; and that if plaintiff's signature or that of his wife appears thereon the same were procured by fraud through the substitution of papers or in some manner unknown to the plaintiff and the said deed is void as a result thereof", and, "That the said deed was incomplete when signed by the plaintiff and his wife, if it was signed by them, according to plaintiff's best information and belief". An Answer was duly filed thereto, which Answer in part asserts: "That these answering defendants are innocent bona fide purchasers for value of the said one-half (½) interest as hereinbefore set forth and in reliance upon the record title as disclosed by the records in the office of the Register of Deeds, Divide County, North Dakota, and that no privity exists between these answering defendants and

said Vernon J. Drabek except as purchaser and grantor".

Prior to plaintiff's acquisition of title to the lands involved, the properties were owned by Oscar Rosenquist, father of the plaintiff. The father owned the fee title to the Northeast Quarter of Section 17, aforesaid, but his ownership to said North Half of Section 26 was less an undivided one-half interest in the oil, gas and minerals, such one-half interest having been reserved by his grantor. Upon the death of Oscar Rosenquist, plaintiff became the owner by inheritance of an undivided one-half interest of his father's estate in said lands, and later the plaintiff purchased the other one-half interest of the father's estate from his (plaintiff's) brother.

It appears that one Albert Makee, a businessman residing in Noonan, North Dakota, was, in June, 1950, securing from local landowners oil and mineral leases, and conveyances of minerals. Some days prior to June 8, 1950, Mr. Makee, who was personally acquainted with the plaintiff, and the plaintiff had a talk on the streets of Noonan. Plaintiff testified that such talk concerned an oil and gas lease only, and that Mr. Makee offered to pay for such lease 10 cents per acre plus a $10 bonus, making a total of $58. Mr. Makee testified, as witness for the defense, that such talk concerned not only a lease, but an undivided one-half interest in minerals— that he agreed to pay ten cents per acre for the lease, and the $10 for the mineral deed. Thereafter Mr. Makee procured a memorandum of title from the Divide Abstract Company, dated June 3, 1950, and then, in his own office, prepared an oil and gas lease in favor of one Frank R. Lee as lessee, a mineral deed of and to an undivided one-half interest in and to all of the oil, gas and other minerals in and under and that may be produced from said lands, in favor of Vernon J. Drabek, of Oklahoma City, Oklahoma, grantee, and a receipt for $58. On the evening of June 8, 1950, Mr. Makee went to the home of the plaintiff in Noonan, North Dakota. Testimony as to the occurrences in the plaintiff's home at that time is not in accord. The only persons present were the plaintiff, his wife, and Mr. Makee. Mr. Makee arrived in the early evening, just after the lights had been lit; plaintiff and his wife had eaten their evening meal; the dishes were on the table; one corner of the table was cleared, and the papers were put on this cleared portion of the table by Mr. Makee. According to the testimony of plaintiff, four papers, which had been clipped together, were put on the table by Mr. Makee. The top one was the oil and gas lease. Plaintiff read this in its entirety. Plaintiff states that he believed the other papers were copies of the top one—that Mr. Makee had so stated, and informed him that these were necessary and one copy would later be sent to him. Plaintiff denied that he knew he was signing, or intended to sign, a mineral deed; however, he admitted that the signature of himself and of his wife on the original deed appeared to be genuine, and that the only time the deed could have been signed by them was at the time and place stated. Plaintiff also, at the same time and place, signed a receipt. In his deposition plaintiff testified positively that at the time of his signing the receipt, it was in blank—that he signed such receipt in blank because Mr. Makee told him it would be for an insurance policy in which plaintiff's oldest son would be the insured. (Mr. Makee was also an insurance agent.) At the time of trial, plaintiff testified that the receipt was filled in when he signed it. Plaintiff further testified that after the top paper was signed, Mr. Makee kept his hand on the upper lefthand corner; after each paper was signed, it was turned up and back, and the next paper was signed; that he could see about the lower two-thirds of the papers underneath; that he did not read any part of the other papers; that he made no effort to read them; that he did not ask Mr. Makee to read the papers below the top one; and, when, while he was on the witness stand, his attention was directed to the very noticeable difference in the

physical appearance of the lease and deed, plaintiff admitted that his failure to notice the difference was due to his own lack of care and his trust in Mr. Makee.

Plaintiff further testified that just after the papers had been signed in his said home Mr. Makee paid him $10 in currency, and that he understood the balance due $48 represented the premium on the life insurance policy; that he never received any more money, but the policy was delivered about two weeks thereafter. In general, the testimony of plaintiff's wife with reference to the happenings at their home corroborated that of the plaintiff. Plaintiff, in his deposition, testified positively that at the time of signing the papers Mr. Makee did not pay him any money.

Mr. Makee, as witness for the defendants, testified that prior to preparing the papers he and plaintiff had talked about both the lease and mineral deed; that the lease, deed and receipt were fully filled out by him in his office and then taken to the home of plaintiff on the evening aforementioned; that at such time he had only three papers—the lease, the deed and the receipt; that he did not keep his hand on the papers, but thinks the lease and deed were handed to the plaintiff together; that after plaintiff signed the papers his wife did likewise; that he then gave to plaintiff $58 in currency, and that this transaction had nothing to do with any insurance policy. Makee further testified that he took the acknowledgement, as notary public, of the plaintiff and his wife, had the deed witnessed by two persons, and then sent the deed to the grantee, Mr. Drabek. It appears that at the time of securing this deed, Mr. Makee was acting for Mr. Drabek—that the money paid for the deed came from Mr. Drabek, and that in the purchase Mr. Makee was acting as agent for the grantee.

The testimony concerning alleged fraud and misrepresentation is in sharp conflict. Mr. Makee testified that there was neither fraud nor misrepresentation, and that the grantors (plaintiff and wife) in the mineral deed knew and understood what they were doing. Testimony of plaintiff and his wife is to the contrary.

It is undisputed that after securing the mineral deed Mr. Makee forwarded such deed and memorandum of title to the grantee, and that Mr. Drabek then took such memorandum of title, and deed, to Mr. V. V. Harris at the latter's office in Oklahoma City, Oklahoma. Apparently Mr. Harris, in his said office, prepared the deed to the defendants conveying their present interest involved, paid to Mr. Drabek the sum of $600 therefor, and, in the matter of such purchase relied upon the memorandum of title and deed to Mr. Drabek. The deed from Mr. Drabek to the defendants did not contain the post office address of either grantee, but shortly after the delivery of such deed to defendants Mr. Harris forwarded both mineral deeds to the Register of Deeds of Divide County, North Dakota, who caused them to be recorded.

It was stipulated at the trial that the insurance policy referred to, being Policy Number 81,155 issued by Union National Life Insurance Company of Lincoln, Nebraska, would be secured and filed, and should be considered as evidence by the Court. This policy has been filed herein; it was issued on November 1, 1950, and the application therefor was dated September 18, 1950.

Plaintiff contends that "the deed to Drabek was obtained by a substitution, trick and without the knowledge of the Rosenquists and is a forgery", and that there was no delivery of the Drabek deed, and that defendants are not bona fide purchasers for value and without notice.

As stated, the testimony concerning the transaction culminating in the mineral deed to Mr. Drabek is in sharp conflict. At the trial substantial evidence was submitted by plaintiff for the purpose of adversely affecting the credibility of the witness Makee. Such evidence was sufficient to make the Court reluctant to place great reliance on the

testimony of this witness. However, testimony of the plaintiff concerning certain material matters which was given in the deposition, and at the trial, was inconsistent and in conflict; it is also very apparent that plaintiff and his wife were confused or in error as to other matters, such as to the time of issuance of the insurance policy referred to. Plaintiff admits that after this transaction, and after he had knowledge of the record of the mineral deed, he borrowed money from Mr. Makee, had him prepare his income tax returns, had a friendly relationship with Mr. Makee, and never accused him of defrauding or injuring him. This relationship was not normal, if we accept the version of plaintiff and his wife.

The proof of fraud is not clear and unequivocal. It is so conflicting, uncertain and indefinite that it is difficult to determine what the true facts are. Its force is certainly diminished by a lack of care of mentally competent grantors.

Some of the identical issues now before this Court were passed upon by the Supreme Court of North Dakota in the comparatively recent, carefully prepared and well considered cases of Hoffer v. Crawford, N.D., 65 N.W.2d 625, and Dixon v. Kaufman, 79 N.D. 633, 58 N. W.2d 797. The facts involved in said cases are quite similar to those herein.

Even though it be assumed that fraud were perpetrated upon plaintiff by Mr. Makee when he procured the mineral deed, such deed was not a forgery and therefore void for all purposes.

"It is contended that the mineral deed constitutes a forgery and is, therefore, void for any purpose. As authority for that contention reference is made to the note in 14 A.L. R. at p. 316 following the case of Austin v. State of Tennessee, 143 Tenn. 300, 228 S.W. 60 [14 A.L.R. 311], and also the note in 56 A.L.R. 582, dealing with the procurement of a signature by fraud as a forgery. Particular reference is made to the case of Horvath v. National Mortgage Company, 238 Mich. 354, 213

N.W. 202, 56 A.L.R. 578. The annotation in 14 A.L.R. 316 states:

" 'While the courts are not in entire accord on the question, in a majority of the cases it is held that fraudulently procuring a genuine signature to an instrument *does not* constitute forgery. Wells v. State, 89 Ga. 788, 15 S.E. 679; People v. Pfeiffer, 243 Ill. 200, 90 N.E. 680, 26 L.R.A.,N.S., 138, 17 Ann.Cas. 703; State v. Corfield, 46 Kan. 207, 26 P. 498; Johnson v. State, 87 Miss. 502, 39 So. 692; State v. Mitten, 36 Mont. 376, 92 P. 969; State v. Flanders, 38 N.H. 324; People v. Underhill, 142 N.Y. 38, 36 N.E. 1049, reversing 75 Hun 329, 26 N.Y.S. 1030; Com. v. Sankey, 22 Pa. 390, 60 Am.Dec. 91; Hill v. State, 1 Yerg. 76 (9 Tenn. 76), 24 Am.Dec. 441.' (Emphasis supplied.)

"It is also stated:

" 'In some jurisdictions the view is taken that the procuring of a genuine signature to an instrument by fraudulent representations constitutes forgery. State v. Shurtliff, 18 Me. 368; Com. v. Foster, 114 Mass. 311, 19 Am.Rep. 353; Gregory v. State, 26 Ohio St. 510, 20 Am.Rep. 774, 2 Am.Crim.Rep. 146. See also State v. Farrell, 82 Iowa 553, 48 N.W. 940.'

"This, however, is the minority rule.

"In the case of Hauck v. Crawford, S.D., 62 N.W.2d 92, at page 94, the court comments on the foregoing notes dealing with the procurement of a signature by fraud as forgery as follows:

" 'We are not inclined to accept the trial court's holding that the manner in which plaintiff's signature was obtained constituted a forgery. As disclosed by the notes in 14 A.L.R. 316 and 56 A.L.R. 582, such holding is a minority view, and seems to us unsound. We believe the rule we have announced in Federal Land Bank [of Omaha] **v.**

Houck, supra (68 S.D. 449, 4 N.W. 2d 213), and in this opinion will better sustain the ends of justice. Our holding, we believe, recognizes actualities. The signature was the real signature of the plaintiff. True, plaintiff was induced to sign by a false representation, but to hold a signature thus obtained a forgery seems artificial and out of harmony with the actual facts.' Hauck v. Crawford, S.D., 62 N.W.2d 92, 94." Hoffer v. Crawford, supra [65 N.W.2d 632].

"A deed obtained by fraud is sometimes void but more often is merely voidable, depending upon the facts on which the claim of fraud is based. 55 Am.Jur., Vendor and Purchaser, Sections 666 and 667; 16 Am.Jur., Deeds, Section 35; 45 Am.Jur., Records and Recording Laws, Section 106; 26 C.J.S., Deeds, § 68 b. Uniformity does not prevail among the courts as to the circumstances of fraud which will render a deed void and inoperative as against the claims of an innocent purchaser. It would seem, however, that in such cases the innocent purchaser should be protected unless the fraud is clear, unequivocal, and its force undiminished by a lack of care on the part of a mentally competent, defrauded grantor." Dixon v. Kaufman, supra, 58 N.W.2d at page 805.

At the time of the transaction plaintiff was twenty years of age; he had graduated from the eighth grade; he had farmed for years; he had opened a bank account, had purchased land, and had given notes and mortgages; he was in good health physically and mentally; he testified he read and understood the oil and gas lease prior to signing it; and on the witness stand he appeared to be intelligent and of normal mentality. At the time the papers were signed plaintiff and his wife had been married about a year; she was then nineteen years of age, had had no business experience, but seemingly is mentally quick and alert. She, too, read and understood the lease, and made no special effort to read the other papers which she signed.

Had plaintiff and his wife used ordinary care in looking at the mineral deed before they signed it, they would have known what they were signing. The difference in physical appearance between it and the oil and gas lease is readily discernible, and their lack of care and attention made the fraud, if any, possible. If the defendants are bona fide purchasers for value and without notice, the loss must fall upon the plaintiff.

At the time Mr. Drabek and Mr. V. V. Harris negotiated personally, in the latter's office in Oklahoma City, about the purchase by defendants of their interest in this property, Mr. Drabek presented to Mr. Harris the memorandum of title heretofore referred to, together with the mineral deed executed by plaintiff and wife as grantors, to him, as grantee. The memorandum of title was dated June 3, 1950, and was issued by the Divide Abstract Company, by its president. It bore the corporate seal, showed the record title owner of the land to be the plaintiff, and showed the latter's title as to minerals was consistent with plaintiff's right to convey the mineral interest as included in the mineral deed. The deed was dated the 8th day of June, 1950, was signed by plaintiff and his wife, bore the signature of two persons as witnesses, was regular on its face, and bore a notarial certificate which showed it had been acknowledged by the grantors before Albert F. Makee, notary public. Notarial expiration date and seal were affixed. Mr. Harris had no notice, actual or constructive, of outstanding rights of others; he had no knowledge of any facts which, in the exercise of common prudence or ordinary diligence required investigation and inquiry. The deed and the certificate of acknowledgement were regular, and examination of the

original instrument or the records would not have disclosed any irregularity.

There was no evidence, insofar as the defendants are concerned, on which they could base any information or belief of facts which would render the transaction as to them unconscionable. They had a right to rely on the presumption of fair and honest dealing. There is a presumption that private transactions have been fair and regular. NDRC of 1943, Section 31–1103, subd. 19. Also see Krause v. Krause, 30 N. D. 54, 151 N.W. 991; Union Bank of Dunn Center v. Hackett-Gates, Hurty Co., 62 N.D. 549, 243 N.W. 926.

The mineral deed executed by Mr. Drabek to defendants was apparently prepared by Mr. V. V. Harris in his office, and on an Oklahoma form. It was duly executed by the grantor who received from Mr. Harris, as consideration therefor, the sum of $600. The post office addresses of the grantees were omitted from this deed, and for this reason the recording thereof was prohibited by Section 47–1905, NDRC 1943. However, an estate in realty may be transferred by an instrument in writing subscribed by the grantor, and this deed was valid as between grantor and grantees. Sections 47–1001 and 47–1006, NDRC 1943; Dixon v. Kaufman, supra.

"Good faith shall consist in an honest intention to abstain from taking any unconscientious advantage of another even though [through] the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." Section 1–0121, NDRC 1943.

"Notice shall be either actual or constructive." Section 1–0122, ND RC 1943.

"Actual notice shall consist in express information of a fact." Section 1–0123, NDRC 1943.

"Constructive notice shall mean notice imputed by the law to a person not having actual notice." Section 1–0124, NDRC 1943.

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself." Section 1–0125, NDRC 1943.

The essential elements of a bona fide purchaser of land are, first, the payment of a valuable consideration; second, good faith and absence of purpose to take an unfair advantage of third persons; and, third, absence of notice, actual or constructive, of outstanding rights of others. Bergstrom v. Johnson, 111 Minn. 247, 126 N.W. 899; Vol. 5, Words and Phrases, Bona Fide Purchaser, p. 629; 92 C.J.S., Vendor & Purchaser, § 321, p. 214.

It is the opinion of this Court that the evidence clearly indicates the defendants to be bona fide purchasers, for value and without notice, actual or constructive.

For the reasons hereinbefore stated, judgment will be for the defendants. Counsel for the defendants will prepare Findings, Conclusions, Order for Judgment and Judgment in accordance herewith.

It will be so ordered.