THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN PFEIFFER, Plaintiff in Error.

*Opinion filed December 22, 1909—Rehearing denied Feb. 3, 1910.*

1. FORGERY—*elements necessary to constitute crime of forgery.* To constitute the crime of forgery there must be a false writing or alteration of an instrument, the instrument as written must be capable of defrauding, and there must be an intent to defraud.

2. SAME—*in Illinois no distinction exists between making false instrument and uttering one.* Under the Illinois statute there is no distinction between making, altering or counterfeiting an instrument with intent to defraud, and uttering, publishing and passing as genuine any forged instrument with an intent to defraud, knowing the same to be false, altered, counterfeited or forged.

3. SAME—*when person is guilty of forgery.* In Illinois every person who is guilty either of making and forging an instrument, or of uttering and passing or attempting to uttter and pass such instrument under the conditions named in the statute, is deemed guilty of forgery.

4. SAME—*what does not constitute forgery.* A trustee named in a deed of trust who falsely represents to the makers of the notes secured that such notes are lost or destroyed, thereby inducing the

makers to sign new notes, which the trustee delivers to a purchaser of the land and receives from such purchaser the money due thereon, which he appropriates, is not guilty of forgery under the Illinois statute.

5. CRIMINAL LAW—*one who is not guilty of offense charged must be acquitted.* One who is not guilty, under the law, of the offense of forgery charged in the indictment is entitled to an acquittal, even though the instrument upon which he procured money was signed by the maker because of the defendant's false representations or pretenses.

HAND and CARTER, JJ., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

A. J. HANLON, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, and JUNE C. SMITH, (W. A. RITTENHOUSE, and JOSEPH L. McNAB, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

John Pfeiffer, plaintiff in error, was indicted, tried and convicted in the criminal court of Cook county of forgery. He has sued out a writ of error from this court to obtain a review of the record.

The only error insisted upon in this court is, that, conceding all of the facts testified to by the witnesses for the People, they do not make a case of forgery.

The undisputed facts established by the evidence are as follows: On the 16th of November, 1901, the premises known as 882 West Monroe street, in the city of Chicago, were owned in fee simple by Ernest G. Troy, Harry L. Troy, and their mother, Emeline Troy. Emeline Troy afterwards quit-claimed her interest in the property to the two sons. At the time referred to there was an encumbrance upon the property for $1000, held by Anna M.

Blodgett. The Troys desired to negotiate a further loan of $2000 upon this property, and on the date above named a loan for $2000 was made on the property by Hulda Vogel, who was represented in the transaction by plaintiff in error as her attorney. On the 19th of November, 1901, the Troy brothers and their mother executed their promissory note for $2000, together with ten interest coupon notes for $60 each, payable to themselves, and endorsed them to Hulda Vogel. To secure the payment of the said notes the Troys executed a trust deed on the property above referred to, in which plaintiff in error was named as trustee, with the usual powers incident to such trust. The notes were delivered to Hulda Vogel and by her placed in her safety deposit vault, and in May, 1903, she sailed for Europe, leaving the notes in the vault, except two or three of the interest coupons which had been paid at maturity. The trust deed was retained by plaintiff in error. Some time in the month of June, 1903, the Troy brothers had an offer of $4750 for said property by Elizabeth Greenwood Lighthall which they desired to accept. The money was placed in escrow with the Chicago Title and Trust Company, the escrow agreement being signed by Ernest G. and Harry L. Troy and by John Pfeiffer, their attorney, and by John Pfeiffer personally. Under the agreement the money placed with the trust company was only to be paid on the written order of Mrs. Lighthall. She insisted that the Blodgett encumbrance and the Vogel trust deed should be released of record before the money was paid over to the Troys. The absence from the United States of Mrs. Vogel made it impossible to obtain possession of the notes which she had left in her safety deposit vault in Chicago. The evidence shows that on June 16, 1903, the plaintiff in error wrote a letter to Harry and Emeline Troy in which he stated that the original notes were either lost or misplaced, and asked the Troy boys and their wives and Emeline Troy to sign a new set of notes, which were enclosed

in the letter, to be used in lieu of the original notes. The Troys accordingly signed the $2000 note and the interest coupon notes and returned them to the plaintiff in error. These notes, together with the trust ·deed, were turned over by plaintiff in error to the Chicago Title and Trust Company, and at the same time he deposited a release deed releasing the $2000 trust deed, and he received from the Chicago Title and Trust Company a check for $2060, being the full amount due under the Vogel trust deed. The plaintiff in error did not account to his client for this money. The indictment charges him with forging and uttering the last set of notes. The evidence is uncontradicted that the Troys signed these notes, and that they understood at the time they were so signed that they were to be used for the purpose of securing a release of the Vogel trust deed. The only question to be decided in this case is whether the foregoing facts warrant a conviction of plaintiff in error of the crime of forgery.

In the case of *Goodwin* v. *People,* 228 Ill. 154, we had occasion to quote a number of common law definitions of the offense of forgery, and from these authorities it was held that in order to constitute forgery the three following elements must exist: (1) There must be a false writing or alteration of an instrument; (2) the instruments as made must be apparently capable of defrauding; (3) there must be an intent to defraud. The definition of forgery found in paragraph 105 of our Criminal Code is, in substance, the common law definition extended to take in some instruments which were not known to the common law. There is under our statute no distinction between making, altering or counterfeiting an instrument with intent to prejudice, and in uttering, publishing and passing as true and genuine any such forged instrument with an intent to damage or defraud, knowing the same to be false, altered, forged or counterfeited. Every person who is guilty either of making and forging or uttering and passing or attempt-

ing to utter and pass, under the conditions named in the statute, is deemed guilty of forgery.

It is conceded on behalf of the State that plaintiff in error is not guilty of falsely making and forging the notes in question, but it is strenuously contended that the delivery of the notes to the Chicago Title and Trust Company constituted an uttering and passing of such notes, and therefore a forgery under our statute if such notes were, in fact, forgeries and known to be such by plaintiff in error. It is contended by the defendants in error that these notes were, in fact, false; that they purported on their face to have been made on the 16th of November, 1901, when, in fact, they were made in June, 1903, and that the uttering and passing of such notes by plaintiff in error, knowing that the notes were not what they purported to be, constitute the offense of forgery, and some authorities, mainly from English courts and writers, are cited which seem to support that view. The case of *Regina* v. *Ritson,* 1 L. R. C. C. 200, is the strongest of these authorities in support of the State's contention. The facts in that case are as follows: "In January, 1868, R., the owner, borrowed from G. £730, giving him an equitable mortgage and deposit of title deeds. In May of the same year R. went into bankruptcy. G. came into possession of the land by deed from R. and the trustee in bankruptcy. Subsequently the son of R. commenced an action of trespass against G., he holding a deed from R. which purported to be executed in March, two months prior to the deed to G. The deed had, in fact, been executed after the execution of the deed to G." On behalf of the prisoner it was contended that the deed could not be a forgery because it was really executed by the parties by whom it purported to be made. On behalf of the prosecution it was contended that it was a forgery because it was a false deed fraudulently made. The case was argued before the judges *en banc,* and the separate opinion of each judge holds it to be for-

gery. The following quotation from the separate opinion of Kelly, C. B., states the view of the court and the reasoning employed to support the conclusion: "The definition of forgery is not, as has been suggested in argument, that every instrument containing false statements fraudulently made is a forgery, but adopting the correction of my brother Blackburn, that every instrument which fraudulently purports to be that which it is not is a forgery, whether the falseness of the instrument consists in the fact that it is made in a false name, or that the pretended date, when that is a material portion of the deed, is not the date at which the deed was, in fact, executed. I adopt this definition. It is impossible to distinguish this case in principle from those in which deeds made in a false name are held to be forgeries."

This case, and others in line with it, apparently make no distinction between an instrument which is forged and counterfeited and the genuine instrument which the maker is induced to execute through the fraud and misrepresentation of another. All of the American and some of the later English cases on the subject, so far as we are advised, with the single exception of *State* v. *Shurtleff*, 18 Me. 368, agree that it is not forgery to procure the signing of an instrument by the party purporting to be bound by it by fraudulent representations, or by falsely reading it in his hearing, where he is illiterate. (*Regina* v. *Collins*, 2 Mood. & R. 461; *Regina* v. *Chadwick*, id. 545; *Hill* v. *State*, 1 Yerg. 75; *Commonwealth* v. *Sankey*, 22 Pa. St. 390.) In the case last above cited the defendant wrote a note, payable to himself, for $141, and got an illiterate man to sign it by falsely and fraudulently pretending that it was for $41, only. In disposing of this case, Black, Chief Justice, speaking for the court, said: "The act was a forgery according to all the text writers on criminal law, from Coke to Wharton. But their doctrine is not sustained by the ancient English cases and is opposed by the modern

ones.    Only three American decisions were cited on the argument, and we take it for granted that there are no others on the point.    Two of these,—*Putnam* v. *Sullivan,* 4 Mass. 45, (3 Am. Dec. 206,) *Hill* v. *State,* 1 Yerg. 76, (24 Am. Dec. 441,)—are wholly with the defendant, and the other (*State* v. *Shurtleff,* 18 Me. 371,) supports the argument of the commonwealth's counsel.    The weight of the judicial authorities is in favor of the opinion that this is no forgery.    We think that the arguments drawn from principle and the reason of the thing preponderate on the same side.    It must be admitted that in morals such an imposture as this stands no better than the making of a false paper.    But even a knave must not be punished for one offense because he has been guilty of another.    Forgery is the fradulent making or altering of a writing to the prejudice of another's right.    The defendant was guilty of the fraud but not of the making.    The paper was made by the other person himself, in prejudice of his own right.    To complete the offense, according to the definition, it requires a fraudulent intent and making both.    The latter is innocent without the former, and the former, if carried into effect without the latter, is merely a cheat.    If every trick or false pretense or fraudulent act by which a person is induced to put his name to a paper which he would not otherwise have signed is to be called a forgery, where shall we stop and what shall be the rule?    Is it forgery to take a note for a debt known not to be due?    Or to procure a deed for valuable land by fraudulently representing to the ignorant owner that it is worthless?    Or to get a legacy inserted in a will by imposing on a weak man in his illness?    All these would be frauds,—frauds perpetrated for the purpose of getting papers signed,—as much as that which was committed in this case, but no one thinks they are forgeries."

The case of *Putnam* v. *Sullivan,* 4 Mass. 45, supports the Pennsylvania case above quoted from, as does also the

Tennessee case of *Hill* v. *State,* 1 Yerg. 76. Since under our statute forgery and obtaining the signature of a person to a written instrument by a false pretense or false representation are separate and distinct offenses, the reasoning of those courts which hold that it is not a forgery to obtain the signature of a person to an instrument by a false pretense or a false representation is better adapted to the laws of this State than those cases which seem to ignore the distinction and hold that to be forgery which under our statute would clearly be punishable as a false pretense. Our legislature recognizes a distinction in these offenses, and it is our duty to enforce the law as it exists in this State. However reprehensible the conduct of plaintiff in error may be when viewed from a moral standpoint or from its criminality under other statutes, if he is not guilty of the offense charged in this indictment he is entitled to an acquittal.

The judgment of the criminal court of Cook county is reversed.                    *Judgment reversed.*

HAND and CARTER, JJ., dissenting:

The crime of forgery may be committed by passing as true and genuine, with intent to defraud, an instrument in writing which is known to the person passing the same not to be what it purports upon its face to be. The crime of forgery was committed in this case by passing the duplicate notes as the original notes with intent to defraud, and it cannot be said the crime of forgery was not committed because the duplicate notes were signed by the Troys. It was not the causing of the duplicate notes to be made, but passing them as the originals with intent to defraud, which constituted the crime of forgery. *Gregory* v. *State,* 26 Ohio St. 510; *Commonwealth* v. *Foster,* 114 Mass. 320; *State* v. *Shurtleff,* 18 Me. 368; *Regina* v. *Ritson,* 1 L. R. C. C. 200; *Luttrell* v *State,* 85 Tenn. 323; *State* v. *Farwell,* 82 Iowa, 556; *Edwards* v. *State,* 108 S. W. Rep. 673.