Austin v. State.

# B. D. AUSTIN et al. v. THE STATE.*

## (Nashville. December Term, 1920.)

1. FORGERY. Obtaining signature by fraud held not "forgery."

Persons who obtained the signature of a person to a deed fraudulent-
ly by representing it to be an affidavit were not guilty of forgery
under Thompson-Shannon Code, section 6596. (Post, pp. 306-310.)

Acts cited and construed: Acts 1811, ch. 1, secs. 2, 3; Acts 1829, ch.
23, sec. 40.

Cases cited and approved: People v. Pfeiffer, 243 Ill., 200; Wallace
v. State, 70 Tenn., 29; Waltson v. State, 14 Tenn., 384; State v.
Smith, 16 Tenn., 150; State v. Humphreys, 29 Tenn., 443; State
v. Corley, 63 Tenn., 410; Garner v. State, 73 Tenn., 215; Chism
v. Bank, 96 Tenn., 651; Weihl v. Robertson, 97 Tenn., 466.

Case cited and distinguished: Hill v. State, 9 Tenn., 76.

2. FALSE PRETENSES. Obtaining signature to deed held false pre-
tenses.

Persons obtaining signature of landowner to deed fraudulently by
informing him that it was an affidavit violated Thompson Shannon
Code, section 6568, making it a penitentiary offense to obtain by
false pretense the signature of any person to any written instru-
ment the false making of which is a forgery. (Post, p. 310.)

3. CRIMINAL LAW. Verdict of guilty under certain counts held
ineffectual.

Where defendants were charged in the first count with the crime
of obtaining signature by false pretense, in second count with
conspiracy to defraud and actual consummation of the conspiracy,
in third count that one defendant counseled and procured the
other to commit a felony, in the fourth count with forgery, and
a verdict of "not guilty" was rendered on first count and "guilty"

---

*Authorities discussing the question as to whether deed signed
under false impression induced by fraud as to its contents or character
is a forgery, are collated in a note in 36 L. R. A. (N. S.) 540.

On the question of fraudulently procuring genuine signature as
forgery, see note in 26 L. R. A. (N. S.) 138.

Austin v. State.

on the other counts, and it appeared that the alleged wrongful act consisted of obtaining a signature to a deed of land by false pretense, which is not forgery, verdict of guilty as to the second and third counts was ineffectual, and defendants were ordered discharged. (*Post, pp.* 310, 311.)

## FROM WILSON.

Error to the Circuit Court of Wilson County.—HON. J. H. GARDENHIRE, Judge.

J. NELSON FISHER, WALKER & McMILLAN and JEFF Mc-CARN, for plaintiffs in error.

W. S. FAULKNER, special counsel, for the State.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The defendants below, B. D. Austin and John Yeaman, were tried on an indictment containing six counts. By consent, a verdict of not guilty was returned as to the fifth and sixth counts of the indictment, and they will be eliminated from this discussion.

The first count charged the defendants with the crime of obtaining the signature of the prosecutor, B. R. Purnell, to a deed by false pretense.

The second count charged the defendants with a conspiracy to defraud the prosecutor and the actual consummation of the conspiracy.

The third count charged the defendant Austin with the crime of being an accessory before the fact in the commission of a felony, in that he moved, counseled, and procured his codefendant Yeaman to commit a felony.

The fourth count charged both defendants with forgery.

The jury returned a verdict of not guilty as to the first count, and a verdict of guilty as to the other three counts.

The facts, briefly stated, are that the defendant Austin, a resident of Le Flore county, Miss., and his wife's brother, B. R. Purnell, a resident of Wilson county, Tenn., had formerly purchased some lands together in Mississippi. They had several lawsuits growing out of these land transactions, and at the end of the litigation it appears that Purnell had acquired all the interest which the defendant Austin had in said lands, there being more than eight hundred acres of same. The feeling between these parties was very bitter, and they did not speak to each other.

After dark, on the evening of May 15, 1919, the defendants, accompanied by two other men, C. E. Rogers and —— Yeaman, brother of the defendant John Yeaman, drove from Nashville to the home of the prosecutor, a distance of thirty-seven or thirty-eight miles; the defendant Austin, however, getting out of the car something like a quarter of a mile before it reached the home of the prosecutor, Purnell. Yeaman went into the home of Purnell and represented himself to be a federal officer in seach of offenders, and pretended to remember a charge against Purnell for failure to obey a court summons, and in this connection induced Purnell to go with him out to the car.

where, according to the testimony of the prosecutor, the defendant Yeaman told him he would have to sign an affidavit that he had not been summoned to appear in court, whereupon Yeaman produced a typewritten paper, which was, in fact, a deed conveying said Mississippi lands to the defendant Austin; that said Yeaman read said paper as an affidavit reciting that the prosecutor had not been summoned to court; that the prosecutor did not have his glasses and it being quite dark out at the car, and that he took a fountain pen from the defendant Yeaman and signed said paper writing without being able to read the same; that the defendant John Yeaman and his associates then started to Nashville, taking the defendant Austin in the car at the point where they left him a short time before. The next morning Rogers and —— Yeaman signed said paper writing as subscribing witnesses and went before a notary public and acknowledged same in the usual form. The deed was then taken to Mississippi and placed of record in the register's office of the county in which the lands were located.

Mr. Purnell, becoming suspicious that he had probably been defrauded in some way, wired his attorney in Mississippi to look out for an instrument relating to his land, and the defendant Austin was apprehended before he made any disposition of the land.

There is no evidence to show who prepared the instrument, or where it was prepared, or that it was ever in the actual possession of the defendant Austin; in fact, the original instrument was never produced, and only a cer-

tified copy from the register's office in Le Flore county, Miss., was introduced in evidence on the trial.

Pending the appeal in this case the defendant Yeaman was killed, and the case has been abated as to him.

In disposing of the case, we concur with the learned trial judge in his statement that the one determinative question is whether the facts detailed above constitute forgery.

Section 6596 of Thompson's Shannon's Code defines forgery as follows:

"Forgery is the fraudulent making or alteration of any writing to the prejudice of another's rights."

It is insisted on behalf of the defendant Austin that the facts detailed above do not constitute forgery, and he relies upon the case of *Hill* v. *State,* 1 Yerg., 76, 24 Am. Dec., 141, in support of his contention. We quote from that case as follows:

" 'That on the 3d day of April, 1822, in the county of Williamson, the accused sold land to Daniel Ireland for $465, to be paid in installments at stated periods; that the note on which the indictment is founded was executed at the time and place aforesaid, in part payment for the land; that Ireland was an illiterate man; that the accused wrote the note, with the other notes for consideration money, in presence of the said Ireland and the subscribing witness, and read it, together with the other notes, over to the prosecutor in the hearing of the subscribing witness; that he, the accused, had written the note in question for $100, when it should have been written for $65; that it was by the

accused falsely and fraudulently read over as a note for
$65, when in fact it was written for $100, and that it was
done with a view to defraud and injure the said Daniel,'
etc.

On this special finding the circuit court gave judgment
against the prisoner, from which judgment this writ of
error is prosecuted.  Waiving for. the present the form of
the indictment and want of plea and issue, let us inquire
if the facts found constitute the offense of forgery.

"Forgery, at the common law, is the falsely making of
a note or other instrument with intent to defraud.  The
definition implies that there must be an act done, or pro-
cured to be done, to constitute this offense.  The above
definition is taken from 2 Leach, Crown Law, 785, where
the author says: 'A note or other instrument may be false-
ly made, either by putting on it a name of a person who
does not· exist, or by putting on it the name of one in
existence without his consent, or by altering it,' etc.  Here
the accused has put no name to the instrument; but it is
found by the special verdict that he wrote the note for the
wrong sum and then induced the signing by a false read-
ing;  still it was the real signature of the person; and all
that can be said is that he was cheated, by a false repre-
sentation of the accused.  This, though a cheat, was not a
forgery."

And so in the instant case the accused put no name to
the instrument, but he induced the signing by a false read-
·ing, or by a false pretense, but the signature was the real

signature of the prosecutor, who was cheated by a false representation of Yeaman.

We are of the opinion that the case just quoted from is in point. It was decided by this court ninety-seven years ago, and has never been overruled or modified, and we see no occasion to overrule it at this late date, especially since we have a statute that covers a case like the one under consideration, and which will be referred to later.

In other jurisdictions the authorities are at variance as to whether the fraudulent procurement of a genuine signature constitutes forgery. In the latest case to which our attention has been called, *People* v. *Pfeiffer*, reported in 243 Ill., 200, 90 N. E., 680, 26 L. R. A. (N. S.), 138, 17 Ann. Cas., 703, the court holds that a signature procured in such manner does not constitute forgery, and cites and approves in the opinion the case of *Hill* v. *State, supra*, and states that the weight of authority is to this effect. In a note to this case, beginning on page 705 of 17 Ann. Cas., the annotator states that such procurement is held to constitute forgery in Alabama, Iowa, Kentucky, Maine, Massachusetts, Michigan, Ohio, and Wisconsin, and that it is not forgery according to the decisions of the courts in Georgia, Illinois, Kansas, Mississippi, New Hampshire, New York, Pennsylvania, and Tennessee. He further states that in England the cases are so much in conflict that it cannot be said that either view has been established.

Mr. Bishop, in volume 1, par. 584, of his New Criminal Law, says: "According to a doctrine apparently just in reason, and sustained by numerous yet conflicting au-

thorities, one does not commit forgery who, by fraudulently misrepresenting the contents of an unexecuted instrument, or by misreading or altering it, prevails on another to sign it, supposing himself to be executing what is different."

It is said, however, that in *Hill* v. *State, supra,* this court was dealing with common-law forgery, and not with forgery as defined by our statute; the latter having been passed in 1829, and subsequent to the decision in that case.

Chapter 1, sections 2 and 3, of the Acts of 1811 were in force at the time *Hill* v. *State* was decided, said statute being as follows:

"2. Be it enacted, that if any person or persons shall falsely make, alter, forge or counterfeit, or cause or procure to be falsely made, altered, forged or counterfeited, any deed, will, testament, bond, writing obligatory, bill of exchange, promissory note for payment of money or delivery of goods or other valuable articles, or bond for the conveyance of land, indorsement or assignment of any bond or writing obligatory, bill of exchange or promissory note for payment of money or delivery of goods or other valuable articles, or bond for the conveyance of land, or any acquittance or receipt either for money or goods, or other valuable articles, with intention to defraud any person or persons, or any corporation, and shall thereof be convicted in any court in this State having jurisdiction thereof, he, she, or they shall be adjudged guilty of felony, and shall be fined in any sum not less than twenty, nor more than five hundred dollars, and imprisoned not less than three nor more than twelve months, and furthermore

receive on his, her or their bare back, not less than five, nor more than twenty-five stripes."

"3.   Be it enacted, that if any person or persons shall falsely make, alter, forge, or counterfeit, or cause or procure to be made, altered, forged or counterfeited, or willingly act or assist in the falsely making, altering, forging or counterfeiting, or shall utter, publish or pass, knowing it to be falsely made, altered, forged or counterfeited, any acceptance of any bill of exchange, or draught for the payment of money or delivery of goods or other valuable articles, or the number or principal sum of any accountable receipt, for any note, bill, or other securtiy for the payment. of money, or any warrant or order for the payment of money, or delivery of goods or other valuable articles, or any land warrant, or an assignment thereof, with intention to defraud any person or persons, or corporation, or this State, and being thereof convicted in any court within this State having jurisdiction thereof, such person or persons shall be adjudged guilty of felony, and shall be fined in any sum not less than twenty nor more than one thousand dollars, and shall be imprisoned not less than six, nor more than eighteen months, and moreover, shall receive on his, her or their bare back, not less than ten, nor more than twenty-five stripes."

The statute just quoted is quite as comprehensive as is section 40 of chapter 23 of the Acts of 1829; the latter being a mere condensation of the former.   Irrespective of this, this court has repeatedly held that our statutory definition of forgery (chapter 23 of the Acts of 1829) is the

same as the common-law definition.   *Waltson* v. *State,* 6
Yerg., 384; *State* v. *Smith,* 8 Yerg., 150;   *State* v. *Hum-*
*phreys,* 10 Humph., 443; *State* v. *Corley,* 4 Baxt., 410;
*Garner* v. *State,* 5 Lea, 215; *Chism* v. *Bank,* 96 Tenn., 651,
36 S. W., 387, 32 L. R. A., 778, 54 Am. St. Rep., 863; *Welhl*
v. *Robertson,* 97 Tenn., 466, 37 S. W., 274, 39 L. R. A., 423.

We are therefore of the opinion that the decision in Hill
v. *State, supra,* is just as effective as if it had been decided
subsequent to the act of 1829.

It was stated hereinabove that we had a statute dealing
expressly with a case of this character.  We had reference
to section 6568 of Thompson's Shannon's Code, which is
as follows:

"Fraudulent Pretense.—Every person, who, by any false
pretense, or by any false token or counterfeit letter, with
intent to defraud another, obtains from any person any
personal property, or the signature of any person to any
written instrument the false making of which is forgery,
shall, on conviction, be imprisoned in the penitentiary not
less than three nor more than ten years."

The original false pretense statutes did not contain any
provision as to procuring the signature of a person to any
instrument by false pretense, etc.   This was added by the
annotators of the Code of 1858, and was likely done to meet
a case of this character; the codifiers having in mind the
decision of this court in *Hill* v. *State, supra.*

In *Wallace* v. *State,* 2 Lea, 29, this court applied this
provision of the act to the defendant, and held him guilty
for the reason that he procured the prosecutor to indorse
a draft by false pretense.

The trial judge, in charging the jury as to the first count in the indictment, set out the foregoing false pretense statute in full, and perhaps made his charge fuller and laid more emphasis upon this than any other count in the indictment.

Able counsel for the State in his brief, in referring to the above statutes, says:

"But, when we come to apply the paper writing in question to the false pretense statute, it would appear that this statute was enacted to cover just such cases as the one at bar."

To this statement we quite agree, but counsel seems to have overlooked the fact that the jury returned a verdict of not guilty as to this count.

With the verdict of not guilty as to the first count, and the court being of the opinion that the defendants were not guilty under the fourth count, it necessarily results that the second and third counts are ineffectual upon which to predicate a verdict of guilty, and no insistence to this effect has been made in the brief of the State, or by counsel in presenting the case at the bar, and hence we will give these matters no further consideration.

An endeavor has been made to draw a distinction between the case under consideration and the case of *Hill* v. *State, supra,* in that the instrument in the latter case was prepared by the defendant at the request of the prosecutor, but written differently from instructions, while in the instant case the defendant Yeaman was not called upon to prepare any instrument.

Austin v. State.

No direct authority is cited in support of this insistence, and this appears to us to be a distinction unsupported by reason. The gravamen of the offense is procuring the signature of another with intent to defraud by false pretense, which this court has said is not forgery.

The paper, without a signature thereto, was harmless, and we are unable to appreciate the distinction which counsel undertake to make.

For the reasons stated above, we feel constrained to reverse the trial court, and to order the defendant Austin discharged.