Frank Girdley *v*. The State.*

(*Nashville,* December Term, 1929.)

Opinion filed June 28, 1930.

---

*County where instrument received through mail as place of uttering instrument, see 12 R. C. L., 153; R. C. L. Perm. Supp., 3091.

W. A. GARRETT, for plaintiff in error.

W. F. BARRY, JR., Assistant Attorney-General, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The plaintiff in error has been convicted under Section 6597, Thompson's-Shannon's Code, providing that: "Whoever fraudulently passes or transfers, or offers to pass or transfer, any forged paper, knowing it to be forged, with intent to defraud another, is guilty of a felony." He was given a penitentiary sentence of four years and has appealed in error to this court.

 The first assignment of error questions the action of the trial judge in overruling a motion to quash the indictment. The prosecution was based on a forged check and the indictment charged the defendant below with offering to pass the same to the prejudice both of the drawer and of the bank on which the check was drawn.

The motion to quash makes the point that this was a charge of two offenses—an attempt to defraud both the drawer of the check and the drawee. This is a mistake. The forging of a particular check is a single criminal act, regardless of how many forged signatures appear thereupon, or how many persons the forged instrument might defraud. *State* v. *Coffman,* 149 Tenn., 525. So the offer to pass such an instrument is a single criminal act.

■ We think the evidence abundantly sustains the verdict and judgment below.

One Ledbetter, the driver of a bus between Davidson and Livingston, testified that on the morning of December 4, 1929, the plaintiff in error came up to the bus as it was about to leave Davidson for Livingston and handed to him (Ledbetter) a sealed letter, saying that the letter contained a check on a Livingston bank, and asking the bus driver to get the check cashed, and bring him (plaintiff in error) the money when the bus returned that afternoon.

Another State's witness, a passenger on the bus, witnessed the delivery of this letter by plaintiff in error to Ledbetter.

The letter was taken by Ledbetter to the bank at Livingston and when opened was found to contain a check apparently drawn by A. H. Copeland for $36 in favor of Bill McCloud together with a letter purporting to be from Bill McCloud asking that the money be sent to him. The teller pronounced Copeland's signature a forgery and Ledbetter was asked where he got the letter. He replied that he got it from a boy at Davidson, perhaps one of the Girdleys, but Ledbetter did not know the boy's first name. An officer went back on the bus with Ledbetter when he returned to Davidson that afternoon. After they reached Davidson, Ledbetter identified plaintiff

in error, Frank Girdley, as the man who had given him the letter.

During this same day, it seems that Frank Girdley had been charged at Davidson with the forgery of another check and we gather from the record that Frank Girdley's father had settled the other matter.

When the bus reached the postoffice at Davidson on the afternoon of December 4th, returning from Livingston, it was met by a brother of Frank Girdley, and this brother asked Ledbetter if he had gotten money on the check Frank Girdley sent to Livingston. This is testified to both by Ledbetter and the officer. The brother testified that he got the information about Frank Girdley sending the check to Livingston from his father, the father also of plaintiff in error. The father did not take the stand and we can only infer that when Frank Girdlev was hauled up about the other check, he must have told his father about sending the McCloud check in by the bus driver.

The plaintiff in error denied that he gave the check and the letter to the bus driver. He introduced several members of his family and a neighbor lady, all of whom testified that he slept late on the morning of December 4. 1929, until about ten o'clock, the bus leaving Davidson about 8:45. It is so easy for members of a defendant's family and others interested in him to be mistaken as to the particular date of an incident, that this court has often justified the action of the jury in rejecting a family proven *alibi*. We see no reason to discredit the verdict of the jury in this case.

All the witnesses on both sides introduced proof of good character, the only thing against Ledbetter being a suggestion that he was unduly attentive to some girl in the neighborhood of Davidson—he being a married man. His reputation for truth and veracity is not impeached.

182

We think there is no preponderance of evidence against the verdict.

It is insisted, however, that the venue of this case was properly in Fentress County. Davidson is in that county and the letter and the check were delivered to the bus driver in Davidson. The bank, however, on which the check was drawn, as heretofore stated, was in Livingston, Overton County.

■ Section 6597, Thompson's-Shannon's Code, upon which this indictment is based, describes an offense equivalent to the common-law offense of uttering forged paper. *Abston* v. *State,* 134 Tenn., 604.

■ Uttering a forged paper may be effected by means of an agent although the agent himself is entirely innocent of any guilty intent. 26 C. J., 928.

■ When such offense is committed through an agent the venue is in the county where the acts were done by the agent without reference to the whereabouts of the principal. 26 C. J., 930.

■ Depositing a forged instrument in the mail directed to another county makes the county where the instrument is received, and not the county in which it was mailed, the place of offense of uttering it, if such offense is committed. 12 R. C. L., 153; 26 C. J., 929.

In *Foute* v. *State,* 83 Tenn., 712, the forged paper was mailed from Loudon County to Davidson County and paid in Davidson County. It was held that the venue was in Davidson County. This court saying that jurisdiction to try the offense was in the county where the forged paper was received.

■ An effort is made to distinguish *Foute* v. *State,* from the present case on the idea that the forged paper was paid in *Foute* v. *State,* whereas in this case the forgery was detected and payment refused. This is im-

material. It is not essential that the fraud be successful in order to make out the offense of uttering forged paper. To offer such a paper is to utter it whether it is taken or not. 26 C. J., 926.

This check was received, presented at the bank in Overton County. Uttering a check consists in presenting it for payment, and the act is then done, although no money may be obtained. *State* v. *Hobl* (Kan.), 194 Pac., 921.

■ It is also urged that the State has failed to show that the check involved was of any legal efficacy, that the drawer Copeland had any account or any credit at the Livingston bank, that the check would have been paid if genuine. It is accordingly said that there is no showing of prejudice to anyone and no offense. *State* v. *Smith,* 16 Tenn. (8 Yerg.), 150, and *State* v. *Ward,* 66 Tenn. (7 Baxt.), 76, are cited for this proposition.

It is not necessary that anyone should have been actually injured or defrauded by a forged writing. "It is sufficient that the false instrument was made with intent to defraud and that it is of such a character that it might prejudice the rights of another accepting it as true." 26 C. J., 906. See also 12 R. C. L., 148.

It appears on this record that Copeland, the drawer of the check, was a merchant in business in Fentress County, and evidently known at the Livingston bank. The bank might have honored his check, whether he had an account there or not. In that event he would have been liable to the bank for the amount paid out, had the check been genuine. Or the bank, relying on Copeland's solvency and believing his signature genuine, might have paid the check and sustained the loss, it developing that the check was forged.

Some other complaints are made of the result below but we find no error on the record and the judgment must be affirmed.