(No. 22276.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM KATZ *et al.* Plaintiffs in Error.

*Opinion filed April 21, 1934—Rehearing denied June 8, 1934.*

WM. SCOTT STEWART, A. M. FITZGERALD, and LOREN SULLIVAN, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER; (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.·

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

By writ of error this case comes from the criminal court of Cook county, where plaintiffs in error, Sam Katz and Isidore Kahn, (herein called defendants,) were found guilty by a jury of the crime of forgery. They were indicted upon four counts. The first, upon which the conviction is based, charged them with uttering and passing as genuine a certain forged check on the Lake View Trust and Savings Bank and obtaining credit thereby. The second charged them with attempting the crime set forth in the first count. The third charged them with uttering the forged check with the intent to prejudice the Arms-Yager Railway Car Company. The fourth charged that they made an attempt to do what the third count alleged they did do.

At the close of all the evidence the People elected to rely upon the first count, and a *nolle prosequi* was entered to the remaining counts.

The facts are undisputed. The check involved was a forgery. On October 28, 1932, Katz appeared at the Lake View Trust and Savings Bank, in Chicago, and opened a checking account as a new customer. He then deposited $435. From that time until December 10, 1932, he deposited and checked out funds. A man named Weiner had some difficulty in cashing checks of Katz because the bank officials did not know Weiner. Thereupon Katz took Weiner to the bank officials and instructed them to honor all checks presented by Weiner which bore the signature of Katz. On December 7, 1932, Katz had on deposit a balance of $149. On that day he came to the bank with the forged check and deposited it to his account. This check, dated December 6, 1932, purported to be that of the Arms-Yager Railway Car Company in the sum of $6850, payable to Sam Katz out of the company account with the First National Bank of Chicago. It was endorsed by Katz. This expanded the latter's account, according to the bank ledger sheet in evidence, to $6999. On the morning of December 10 Weiner appeared at the bank with a Katz check for $430. This the bank paid, and Weiner left the bank under the surveillance of two Burns detectives. The same morning, and only a short while after Weiner's visit, Katz appeared at the bank and withdrew from his account, by check, $2450 in currency. A Burns operative was at his elbow and he was taken into custody. Kahn is involved because he, at the request of Katz, brought him to the bank on that occasion in his car and waited for him. He was arrested while in his car outside of the bank.

Weiner, according to Katz, was a dealer in bootleg whisky. In his defense Katz related that he had worked for Weiner about four months delivering whisky and was

directed by his employer to open the bank account under the false name of Katz. His correct name is Sam Zuckerman. He testified that all money deposited in the account came from Weiner and all money withdrawn went to him. He accounted for having the forged check by saying he had obtained the same from Weiner with directions to deposit it. There is evidence in the record that Weiner possessed the forged check and endeavored to negotiate it through another person. John J. Gross, for several years manager of Hotel Coolidge, testified that in the early part of December, 1932, he had asked Weiner to buy a partnership interest with him in the restaurant business he (Gross) then owned, and that Weiner then produced the check in question, made out to Sam Katz, and said, "You put this in your bank and give me the balance of it and I will close with you." Gross replied that as his bank was closed he then had no bank account and could not handle it. Katz said that on the morning of December 10 he gave a check to Weiner for $430. Later that morning he said Weiner ordered him to check out the $2450 and bring it to him. For some undisclosed reason the authorities were not able to apprehend Weiner. Bank officials testified that they keep all new accounts under close surveillance as a matter of business custom. They were notified on December 7 that Katz had tendered the check for deposit. The check was turned over to a Burns operative, who took it to the First National Bank of Chicago and ascertained that it was a forgery. The Lake View Trust and Savings Bank officials then arranged to get hold of Katz when he visited the bank. When Weiner came in on the morning of the 10th he was allowed to take out the $430, although, according to bank officials, this caused Katz to have a serious overdraft. Pursuant to arrangements, Katz was given the $2450 as a means of entrapping him and not with any thought of honoring his check by extending credit to him in that amount.

Defendants assert that a fatal variance exists between count 1 and the actual proof. They allege that the evidence discloses a failure on the part of defendants to utter or pass the check at the bank and that they did not obtain any credit from the bank on the forged instrument. They claim that the worst aspect of their offense is an attempt to utter or pass the check, and on this they were not tried. Count 1 is predicated upon these material parts of the statute (Smith's Stat. 1933, chap. 38, par. 277) : "Every person who shall falsely make, alter, forge or counterfeit any * * * check, * * * or shall utter, publish, pass * * * as true and genuine * * * any of the above named false, altered, forged or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged or counterfeited, with intent to prejudice, damage or defraud any person, body politic or corporate; * * * every person so offending shall be deemed guilty of forgery," etc.

In this State we have held that to constitute forgery the three following elements must exist: (1) There must be a false writing or alteration; (2) the instrument as made must be capable of defrauding; and (3) some act must be done showing an intent to defraud. (*Goodman* v. *People,* 228 Ill. 154.) Our statute makes no distinction between making, altering or counterfeiting an instrument with intent to prejudice, and in uttering, publishing and passing as true and genuine any such forged instrument with intent to damage or defraud, knowing the same to be false, altered, forged or counterfeit. Every person who is guilty either of making and forging or uttering and passing, or attempting to utter and pass, under the conditions named in the statute, is guilty of forgery. (*People* v. *Pfeiffer,* 243 Ill. 200.) The obtaining of credit upon the false instrument does not constitute an element of the crime charged in count 1. The fact that the count does charge such obtaining of credit will not vitiate the indictment, as

the unnecessary averment is surplusage and may be disregarded. Wharton on Crim. Proc. sec. 200.

Defendants seek to establish their theory of what the statute means, by alleging that count 1 required the State to prove an actual passing of the check—in other words, that defendants actually deceived the bank and got away with the money. The case of *People* v. *Dunham,* 344 Ill. 268, is cited by them to show that a passing and an attempt to pass a forged check constitute two separate crimes. That is true, but it has no bearing upon the present case. The uttering of an instrument does not necessarily mean its successful negotiation. The words "utter" and "uttering" have come to have a fairly well settled legal meaning. They mean, substantially, "to offer." (*State* v. *Horner,* 48 Mo. 520; *Girdley* v. *State,* 161 Tenn. 177, 29 S. W. (2d) 255; *People* v. *Caton,* 25 Mich. 388; *People* v. *Rathbun,* 21 Wend. (N. Y.) 521; *Lindsey* v. *State,* 38 Ohio St. 511; *State* v. *Calkins,* 73 Iowa, 128, 34 N. W. 777.) Thus the charge of uttering and passing a forged instrument is broad enough to include either its successful passing or the attempt to pass it. *People* v. *Pfeiffer, supra.*

We cannot agree with the contention of counsel for defendants that since Katz did not defraud the bank no forgery was committed. When the forged instrument is uttered the intent to defraud is presumed. (*Spears* v. *People,* 220 Ill. 72.) Likewise in *People* v. *Meyer,* 289 Ill. 184, we held that where a forged instrument is uttered, the intent to defraud may be presumed or inferred from proven facts and circumstances surrounding the transaction, and that whether anyone is actually defrauded is immaterial. There was abundant evidence that Katz actually uttered and published the forged check, and under the authorities cited it was for the jury to determine, from all the evidence and proven facts surrounding the transaction, whether an inference of fraudulent intent could be justly drawn. We are in no position to say that the jury was

not justified in rejecting what Katz said as to his lack of knowledge of the forgery and his absence of intent to defraud. The check in this case was made payable to Sam Katz, the fictitious name which Zuckerman had assumed while dealing for Weiner in illicit liquor transactions. The jury must have believed that under these circumstances Katz knew something of the forgery, as it seems unlikely that in the ordinary course of affairs any man would receive a check for $6850, made payable to himself, without knowing what services had been rendered or goods received for such a substantial payment of money.

Defendants further contend that the trial judge erred in allowing the jury to take the indictment to the jury room after the State had entered a *nolle prosequi* for three of the four counts in the indictment. They rely upon *People* v. *Ball*, 333 Ill. 104, as authority to support this contention. Under similar circumstances the jury in the *Ball case* had been instructed to ignore the *nolled* counts, and we there held that defendant was not prejudiced. No indication was given, in so holding, that even without an instruction telling the jury to disregard the stricken counts we would have regarded such action as reversible error. There must be engendered from such action a reasonable belief that defendants have been prejudiced thereby. Counsel for defendants here objected to the jury taking the indictment with them, but such objection, standing alone, does not connote prejudice. The crimes charged in the four counts arose out of the same set of circumstances. The offenses charged in counts 1 and 3 were the same, with the exception of the naming of the party damaged or prejudiced. Likewise with counts 2 and 4. A finding of guilt on either of the four counts called for the infliction of the same penalty—one to fourteen years' imprisonment. The penalty imposed under the verdict was one to fourteen years. The jury were instructed that the indictment was not to be taken as evidence, but, on the contrary, con-

stituted only a charge that defendants had committed the crime described. Defendants submitted forms of verdict based only upon count 1. The court refused them, but there is a failure to show that such refusal, considering the verdict forms alone or in connection with the jury taking the indictment, prejudiced the defendants. We do not believe the court should have allowed the indictment to be taken to the jury room, but we do not consider it reversible error, as in our judgment the defendants suffered no prejudice thereby.

It is also insisted that the trial court erred in refusing to grant a change of venue on the ground that the inhabitants of Cook county were prejudiced against defendants to the extent that they could not secure a fair and impartial trial. This motion was based upon alleged clamor arising from the shooting of a policeman by an escaping criminal in the criminal court building a short time before. Defendants claim that a "war on crime" then started and they were in grave jeopardy of being dealt with unjustly. The trial judge did not commit an abuse of discretion when he refused this motion, as we have consistently held that whether prejudice exists in the minds of the inhabitants is a question of fact, to be determined in the sound discretion of the trial judge. *People* v. *Fricker,* 320 Ill. 495; *People* v. *Cobb,* 343 id. 78.

As to defendant Kahn (also called Kayne) an altogether different situation exists. An examination of the record does not disclose sufficient evidence to connect him with Katz in uttering and publishing the forged check. Uncontradicted evidence shows that at that time Kahn was temporarily employed as a salesman in a haberdashery. Katz related that he came to the store on the morning of December 10 to purchase a hat; that he was acquainted with Kahn, and when he found that Kahn was going in the direction of the bank on an errand for his employer he asked Kahn if he would drive him to the bank. Arriv-

ing at the bank Katz asked him to wait for him, and this Kahn promised to do, saying he would drive around the block, as Katz would only be in the bank a few minutes. In substance this is all the evidence to connect Kahn with Katz and with the crime charged. While that evidence is sufficient to create some suspicion it is not sufficient to justify a verdict of guilty. There was a total failure of proof that Kahn knew of the existence of the forged check or that Katz was going to the bank for the purpose of uttering and passing a forged check.

The judgment of the criminal court of Cook county is affirmed as to defendant Katz and reversed as to defendant Kahn.

*Affirmed as to plaintiff in error Katz.*
*Reversed as to plaintiff in error Kahn.*