**STATE of Tennessee, Appellee,**

v.

**John D. McDOWELL, Appellant.**

Court of Criminal Appeals of Tennessee, At Jackson.

Oct. 6, 1983.

Permission to Appeal Denied by Supreme Court Dec. 5, 1983.

A.C. Wharton, Jr., Shelby Co. Public Defender, Charles E. Baucum, Asst. Public Defender, John C. Dice, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Jennifer Helton Small, Asst. Atty. Gen., Nashville, John T. Fowlkes, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

TATUM, Judge.

The defendant, John D. McDowell, was convicted of receiving stolen property under the value of $200 and sentenced to serve not less than 1 year nor more than 3 years in the State penitentiary. He was also convicted of uttering or attempting to utter a forged instrument under $200 in value for which punishment was fixed at not less than 2 years nor more than 3 years confinement. The defendant was found to be an habitual criminal and the punishment for receiving stolen property was enhanced to a life term in the State penitentiary.

The defendant assigns issue that the evidence is insufficient to support the guilty verdicts, that a motion for a judgment of acquittal should have been granted because there was no proof of the value of stolen blank checks, that the court erred in charging the jury with respect to the inference by possession of recently stolen property, and that the court erred in telling the jury that the habitual criminal phase of the trial should not take long. We find no reversible error and affirm the judgment below.

We first address the issue attacking the sufficiency of the evidence. The State's proof established that on May 6, 1981, at about 5:00 P.M., the defendant presented a check to Mr. Mark Walter Kopp, Clerk for Fred Montesi's Supermarket in Memphis. The defendant requested Mr. Kopp to cash the check. Since the check looked "bogus," Mr. Kopp sent the defendant to the store manager for his approval of the check. While the defendant was in the manager's office, Mr. Kopp telephoned the purported maker of the check. Acting on information thus received, Mr. Kopp summoned Mr. Ken Chandler, the security guard. Mr. Kopp took a photograph of the check and of the defendant on a "regiscope camera" when the check was presented to him.

As the security guard was attempting to escort the defendant to a back office, the defendant shoved him and ran out the door. Mr. Ronald R. Rogers, an off-duty policeman, was in the store and saw the defendant shove the security guard and run. Mr. Rogers joined in the chase and apprehended the defendant. The defendant attempted to hit Mr. Rogers but Mr. Rogers subdued the defendant and handcuffed him.

After being taken to the police station and given Miranda warnings, the defendant admitted his attempt to cash the check. He stated that the check was given to him by friends and that he was driven to Fred Montesi's Grocery by friends.

The check that the defendant attempted to cash was dated "5–6–1981." It was made to the order of "JOHN D MCDOWELL" in the sum of $167.27". The check was drawn on the City National Bank and

the name of B & M Thomas, Inc., d/b/a Tom Sawyer Food Mart was printed in the lower right-hand corner and it bore the handwritten signature of Bryan Ingram. The check purported to have been given for "payroll." The blanks in the check were filled by a typewriter. The printed check was numbered 1199.

Mrs. Margaret Hayes Thomas testified that she was the corporate secretary for B & M Thomas, Inc., upon whose account the check was drawn. As corporate secretary, she "handled" the books and checking accounts for the business in 1981 and was one of three persons authorized to sign checks. Her husband and Debby Bryant, an employee, were also authorized to sign checks.

On May 6, 1981, Mrs. Thomas examined her check books and determined that several pages of blank checks were missing from the checkbook, including check number 1199. The witness did not know how long the checks had been missing from the book. Mrs. Thomas did not know "Bryan Ingram," and the company had no employee named John McDowell. It was her habit to fill in the blanks on checks in longhand; she never typed checks and the company did not have a check printing machine.

The defendant did not testify and offered no proof.

■ The defendant does not question the sufficiency of the evidence to support the finding that he was an habitual criminal. The evidence established the defendant had previously been convicted of 10 separate felonies of the character specified by T.C.A. § 39–1–801. A conviction for receiving stolen property will trigger a prosecution under the Habitual Criminal Act. *Smith v. State,* 584 S.W.2d 811 (Tenn.Cr.App.1979).

■ Transfer or uttering of a forged paper under T.C.A. § 39–3–804 requires proof that a person "fraudulently pass or transfer, or offers to pass or transfer, any forged paper, knowing it to be forged, with intent to defraud another..." A forged check is uttered or transferred by the action of presenting it for payment. *Girdley v. State,* 161 Tenn. 177, 29 S.W.2d 255 (1930).

■ The defendant was photographed as he attempted to cash the check. He admitted presenting the check for payment and was identified as the person attempting to pass the check. According to the defendant's statement, the check was given to him by others. It was made payable to the defendant as a "payroll" check although the defendant had never worked for B & M Thomas, Inc. It was purported to have been signed by a person who clearly was not authorized to sign it. When the security guard asked to talk with the defendant about the check, the defendant fled. The evidence abundantly supports the conviction for violation of T.C.A. § 39–3–804 (Uttering forged paper) by the standards of Rule 13(e), T.R.A.P.

■ The evidence also supports the conviction for receiving stolen property under the value of $200. The circumstantial evidence supports the finding that the checks of B & M Thomas, Inc. were stolen. A number of checks, including the one presented by the defendant for payment, had been torn from the checkbook. According to the defendant's statement, the check involved in this case was given to him by friends. It bore the name of the defendant as payee although the defendant had never worked for the maker of the check and was unknown to the maker.

■ All kinds of personal property are "goods" which may be the subject of larceny. T.C.A. § 39–3–1102. It is not necessary that the State prove the value of the personal property stolen to sustain a conviction for petit larceny; it is only necessary that the State prove that the stolen goods are personal property and the property must be of such character as is susceptible of ownership. Blank bank checks meet this criteria. *State v. Alden,* 8 Or.App. 519, 495 P.2d 302, 303 (1972); *Felkner v. State,* 218 Md. 300, 146 A.2d 424, 430 (1958); *Keller v. United States,* 168 F. 697 (7th Cir.1909). The extent of the value of the property taken is relevant only when a conviction for

grand larceny is sought. *Osborne v. State,* 115 Tenn. 717, 92 S.W. 853 (Tenn.1906). The evidence for the conviction of receiving stolen property under the value of $200 meets the standard required by Rule 13(e), T.R.A.P.

■ The trial court properly denied the motion for a judgment of acquittal as to the receiving stolen property charge. We have already held that the evidence is sufficient to sustain the conviction of this offense, and, therefore, it was the duty of the trial judge to overrule the motion. Rule 29, T.R.Cr.P.

■ The defendant next states that the trial court erred in charging the inference raised by possession of recently stolen property. He says that there is no proof that the check had been in fact stolen. We think the circumstantial evidence that the checks had been torn from the back of the checkbook and removed, coupled with the fact that "friends" had given the check in question to the defendant under the circumstances outlined above, is sufficient circumstantial evidence to support the finding that the checks had been stolen.

■ The defendant next complains that the trial judge predicted that the habitual criminal phase of the trial would not take long. The context in which the statements were made to the jury was at the close of the day that the principal trial was concluded, when the following statement was made:

> "Now, ladies and gentlemen, I have to bring you back tomorrow. And I don't want you to even wonder why. But I just have to bring you back tomorrow, all of you. And I don't want to make you have to sit out here and wait, so be back at 10:30. They've got here what they call docket call, a strange procedure that I've never known before. But I've got to worry with it in the morning and I will. While I'm doing that, you all come in at 10:30 and by that time I should be about ready for you. <u>And you shouldn't be here too awfully long tomorrow.</u>"

Soon after the jury was brought into the courtroom on the morning when the habitual criminal phase of the proceeding was to begin, the trial court explained to the jury that the purpose of the proceeding that day was to consider the habitual criminal count of the indictment. The trial judge stated:

> "And your job, though, will be to determine whether or not the defendant has reached that status, the status of an habitual criminal. That's what this is about. <u>It shouldn't be a great long time,</u> but it has to be done."

The defendant argues that the above underscored remarks of the trial judge imply that the finding that he was an habitual criminal "would be a mere formality," and that they intimated to the jury that they should hurry their deliberations and return a guilty verdict on the habitual criminal count.

We do not agree with the defendant's interpretation of these remarks. We can read nothing in the trial court's expressions other than an attempt to give the jurors an idea of how long they would be detained. We find no error here.

The judgments of the trial court are affirmed.

WALKER, P.J., and JAMES C. BEASLEY, Special Judge, concur.