THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REED ALAN MURRAH, Defendant-Appellant.

Fourth District   No. 4—92—0903

Opinion filed December 30, 1993.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant Reed Alan Murrah was convicted of forgery (Ill. Rev. Stat. 1991, ch. 38, par. 17—3) following a jury trial in Champaign County and was subsequently sentenced to a five-year term of imprisonment. He now appeals, contending the trial court erred in not directing a verdict in his favor. We affirm.

On June 10, 1992, defendant was charged by information with two counts of forgery. Count II alleged defendant,

"with the intent to defraud, knowingly made a document, namely: a request form application for an American Express credit card knowing that said document was apparently capable of defrauding another by purporting to have been made by Russell D. Brooks, knowing that Russell D. Brooks did not make said document."

Count III charged defendant with making this document "knowing that said document was apparently capable of defrauding another by purporting to have been made by the authority of Russell D. Brooks when he knew in fact Russell D. Brooks did not give such authority." A third forgery charge (count IV) was filed on June 18, 1992, alleging defendant,

"with the intent to defraud, knowingly altered a document, namely: a request form application for an American Express credit card, by adding Reed Murrah as an employee authorized to receive a card on the account of Brooks Brothers Trucking, knowing that said altered document was apparently capable of defrauding another, by purporting to have been made by authority of Russell D. Brooks, when he knew in fact Russell D. Brooks did not give such authority."

At trial, Russell D. Brooks testified he ran a trucking terminal for over-the-road trucks that he owns and which are leased to a local company. He was responsible for scheduling the drivers, the loading and delivering of the goods. Defendant was employed by Brooks as a record keeper. Defendant did all the record keeping, billing and other office-related duties. Defendant also picked up and opened all of Brooks' mail. Although defendant was only paid $200 a week, Brooks testified he wore expensive clothing and jewelry and drove luxury

cars. Brooks indicated defendant intimated he had a source of income other than his employment at Brooks Brothers Trucking. Brooks explained that in the normal course of daily business, defendant would bring documents or checks which needed his signature into his office and either drop them off for him to sign or wait for the items to be signed if he needed them right away.

In January 1991, Brooks applied for a corporate credit card from American Express. After receiving an application in the mail, Brooks participated in a telephone interview regarding his application. Brooks explained that he would use his credit card only for emergencies because he was currently experiencing a cash flow problem. As to the initial application, Brooks testified defendant typed out the application and then had Brooks sign it. Brooks left the space captioned "For additional cards for other employees, complete this form" blank. He testified that when he was interviewed by American Express, he specifically stated there were to be no additional cards issued on this account. Brooks testified defendant never approached him about obtaining an employee's credit card on the corporate account and he would not have authorized such additional card.

The parties stipulated that a document entitled "Approved Request Form," which listed Brooks' name as the authorizing officer with the corporate account number, was signed by Brooks. Below Brooks' signature, this document contained this sentence: "PLEASE LIST EMPLOYEES YOU WOULD LIKE TO ADD TO YOUR ACCOUNT. NAME AND TITLE OF EMPLOYEE." Underneath that sentence, "Reed Murrah, office manager" had been typed onto the form. Brooks testified he did not intend to sign a form giving defendant permission to receive an American Express credit card on the corporate account and he did not specifically recall signing this form. The application for the additional card was postmarked February 8, 1991.

Approximately three or four weeks after obtaining the credit card, Brooks used it to purchase gasoline on two occasions, totalling approximately $300. When he failed to receive a bill, however, he became concerned. Sometime thereafter, Brooks received a telephone call from American Express about the extremely large amount of charges on the credit card. He explained that a mistake must have been made because he only charged $300 worth of gasoline. The American Express representative explained there was a second card that had been issued to defendant on the corporate account which had been used for various purchases. The representative also told Brooks that the first month's charges of $2,400 had been paid, including the

$300 gasoline charge. Brooks told the representative all purchases made by defendant were unauthorized.

Eric Planbeck, a senior special agent with American Express, identified the original application for the corporate account and the actual credit card issued to Brooks Brothers Trucking. He also identified the additional card issued on that corporate account in defendant's name. Finally, Planbeck identified monthly billing statements covering March through June 1991, with two account numbers, one for Brooks Brothers Trucking and one in defendant's name, and the following dollar totals: (1) March—$2,443.07; (2) April—$6,030.87; (3) May—$2,016.94; and (4) June—$114.20.

Chris Bolt, an investigator with the Champaign County sheriff's department, interviewed defendant on April 26, 1991. Defendant indicated he owned an American Express card on the Brooks Brothers Trucking corporate account. Defendant told Bolt he obtained the card at the same time Brooks obtained the corporate account card by mailing in the form to American Express. He acknowledged making the charges on the monthly statements previously admitted into evidence. Defendant told Bolt that Brooks knew he had this credit card and they had an agreement where they would pay the personal charges incurred by defendant.

Defendant presented no evidence. The jury subsequently convicted defendant of forgery and the trial court sentenced him to five years' imprisonment. He now appeals.

Defendant's argument on appeal, which is the identical argument made at the close of the State's case on his motion for directed verdict, is that the court should have directed a verdict in his favor because the only viable theory of forgery was "alteration" and there was no evidence that defendant added his name to the application as an authorized card holder after Brooks had signed the blank form. Defendant specifically relies upon *People v. Pfeiffer* (1909), 243 Ill. 200, 90 N.E. 680, for support.

In *Pfeiffer*, an attorney falsely indicated to the makers of certain notes that the original notes had been destroyed. He prepared a new set of notes which were executed by the makers. He then used these new notes for his own personal gain. The supreme court held this did not constitute forgery. Specifically, the court stated:

> "Since under our statute forgery and obtaining the signature of a person to a written instrument by a false pretense or false representation are separate and distinct offenses, the reasoning of those courts which hold that it is not a forgery to obtain the signature of a person to an instrument by a false pretense or a

false representation is better adapted to the laws of this State than those cases which seem to ignore the distinction and hold that to be forgery which under our statute would clearly be punishable as a false pretense. Our legislature recognizes a distinction in these offenses, and it is our duty to enforce the law as it exists in this State. However reprehensible the conduct of plaintiff in error may be when viewed from a moral standpoint or from its criminality under other statutes, if he is not guilty of the offense charged in this indictment he is entitled to an acquittal." (*Pfeiffer*, 243 Ill. at 207, 90 N.E. at 682.)

The court noted that certain cases apparently made no distinction between an instrument which is forged and counterfeited and the genuine instrument which the maker is induced to execute through the fraud or misrepresentation of another. All of the American and some of the later English cases on the subject, with a single exception, agreed that it is not forgery to procure the signing of an instrument by the party purporting to be bound by it by fraudulent representations. *Pfeiffer*, 243 Ill. at 205, 90 N.E. at 681.

Defendant suggests this case should be decided in accordance with *Pfeiffer*. He contends that, at most, the evidence against him showed that he fraudulently induced Brooks to sign a genuine "Approved Request Form" for an additional American Express credit card and that this scenario fits the State's theory but does not constitute forgery. Defendant suggests there is no evidence to show that he added his name as an authorized additional card holder subsequent to the time that Brooks admittedly signed the approved request form.

*Pfeiffer* is easily distinguishable. There, the notes themselves were not false, but only the manner in which the attorney obtained the new notes was fraudulent. This, according to the supreme court, did not constitute forgery. Here, the document itself is false. The approved request form lists Brooks as the authorizing officer who gave permission to issue the additional card. Brooks testified he never authorized the issuance of an additional card and specifically told the American Express agent, upon applying for the original card, that he did not want any additional cards issued. Although it was stipulated that Brooks' signature on the approved request form was genuine, Brooks did not recall signing it.

The actual approved request form is a postcard-size document that folds in half. The top line of the form reads, "APPROVED REQUEST FORM" and directly below that appears the information, such as the name, address and account number of the original card holder. The signature line for the authorizing officer appears in the

middle of the form. The bottom of the form contains the space for the information regarding employees to be added to the corporate account. This is where defendant's name and title appear. When the form is folded in half, only the title of the document and Brooks' information and signature appear. The form must either be unfolded or flipped over to see that it is in fact a document authorizing the issuance of additional cards on the corporate account.

If Brooks signed the form while it was folded in half, he would not have seen the language authorizing the issuance of a card to defendant. In fact, Brooks testified he could have signed the form assuming it was merely a request for his card. An inference can be drawn that defendant typed Brooks' information onto the form, obtained his signature and then added his name to the form. Likewise, another inference could be drawn that all the information was filled out on the form but Brooks signed it while it was folded in half and did not know what it was he signed. Brooks testified he never meant to authorize the issuance of an additional card. Either way, defendant, with the intent to defraud, made or altered a document knowing that the document was apparently capable of defrauding another. Ill. Rev. Stat. 1991, ch. 38, par. 17—3.

We find *People v. Kubanek* (1939), 370 Ill. 646, 19 N.E.2d 573, persuasive. There, defendant was acquainted with a widow who was staying at a hotel where he was employed. On eight or nine occasions, the widow gave defendant checks which she had signed but not filled out to use to run errands and purchase items for her. The widow became ill and signed two checks in blank for defendant to use to pay for medical expenses and funeral expenses, if necessary. The widow recovered but defendant filled in each check for $3,000, payable to himself. Defendant was subsequently convicted of forgery and, on appeal, alleged he was not guilty under the facts of the case. *Kubanek*, 370 Ill. at 647, 19 N.E.2d at 573.

The question presented to the supreme court was whether defendant was guilty of forgery by filling in the checks over the admittedly genuine signature of the widow but in violation of his authority. In holding that defendant was guilty of forgery, the court noted the general rule that where authority is given to one to fill in blanks in an instrument, a filling of such blanks other than as authorized constitutes forgery, where the other elements of forgery are present. (*Kubanek*, 370 Ill. at 649, 19 N.E.2d at 574.) The court stated that there would be no question of guilt if defendant had altered the check by changing the name of the payee or by raising the amount of the check. Likewise, the court found it just as clear

that the check was falsely made when defendant filled in the blanks over the widow's genuine signature. The court noted that the statute was not directed solely against forgery of signatures, but included false making, altering, and counterfeiting, when done with the intent to damage or defraud any person. *Kubanek*, 370 Ill. at 650, 19 N.E.2d at 574.

Here, it was stipulated that Brooks' signature on the approved request form was genuine. However, just as the widow in *Kubanek* had not authorized Kubanek to issue checks to himself, Brooks did not authorize defendant to cause an additional American Express card to be issued to himself. When defendant filled out his name as an employee to receive an additional card on the corporate account, he did so other than as authorized inasmuch as Brooks had repeatedly stated he had never authorized nor intended to authorize the issuance of an additional card on the corporate account.

Section 115—4(k) provides:

> "When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant." Ill. Rev. Stat. 1991, ch. 38, par. 115—4(k).

The trial court did not err in denying defendant's motion for a directed verdict. The judgment of the circuit court of Champaign County is affirmed.

Affirmed.

COOK and LUND, JJ., concur.